## SMITH'S EXECUTOR vs. GARTH.

[BILL IN EQUITY TO ENFORCE PARTNERSHIP AGREEMENT.]

1. *Alteration of written contract by parol.*—Although a written contract may be changed or modified by a subsequent parol agreement; yet loose or casual admissions or declarations of one party, apart from the other, and making no allusion to a change of contract, cannot avail to overturn the terms of a prior written contract.
2. *What constitutes partnership.*—A contract by which defendant, as evidenced by his receipts, agreed to invest in Indian lands moneys advanced to him for that purpose by plaintiff, to repay the money with lawful interest, and to divide equally between them the profits realized from the lands, is a mere contract for the loan of money, and does not constitute the parties partners *inter sese.*
3. *Resulting trust in lands bought with loaned money.*—A resulting trust does not arise, in favor of the lender, in lands purchased by the borrower with the money loaned, although the money was loaned for the purposes of being invested in lands, under an agreement that the profits realized from the investment should be equally divided between the parties.

APPEAL from the Chancery Court at Talladega.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Jesse W. Garth, against the executor, widow and heirs-at-law of Solomon C. Smith, deceased; and sought to establish a partnership contract between plaintiff and said Smith, in certain lands subject to entry and sale at Lebanon, and to have an account and

settlement of the partnership matters. It alleged, that a verbal contract was entered into between said Smith and plaintiff, prior to 1st April, 1843, for the purpose of buying and selling Indian lands on speculation, "which contract was afterwards set forth and expressed in certain receipts, or obligations, executed and delivered by said Smith to complainant;" that plaintiff advanced moneys to Smith under this contract at various times, which Smith invested in lands•in his own name; that some of these lands were afterwards resold by him at a profit, and others were unsold at the time of his death.

The receipts referred to, which were made exhibits to the bill, and which were·signed by said Smith, are in these words:

"I have received of Jesse W. Garth fifteen hundred dollars, which I promise to use in the best manner I can to promote the interest of said Garth, by investing it in lands in the Cherokee nation. I do bind myself to repay the said Garth, in twelve months, the said sum of fifteen hundred dollars, with interest from this date; and whatever I may make by the use of the said money, above the lawful interest, is to be divided between me and the said Garth. Signed this 1st April, 1843."

"Somerville, April 18th, 1843. Received of Jesse W. Garth four hundred dollars, which I am to invest in lands at Lebanon; and he is to be paid his money and interest back, and the profits are to be divided."

"July 18th, 1843. Received of Jesse W. Garth fifteen hundred dollars, which is to pay for lands already entered at the land-office at DeKalb; which money is to be refunded, with interest, in twelve months, with half that said lands may have sold for above costs."

The defendants answered the bill, denying the alleged contract of partnership, insisting that the contract was but a usurious loan of money by Garth, and pleading the statute of frauds.

The complainant took the depositions of several witnesses, for the purpose of proving admissions made by said Smith relative to the alleged contract between them. *Jacob T. Bradford,* one of these witnesses, testified as fol-

lows: "I heard Solomon C. Smith say, prior to the 1st April, 1843, that Gen. J. W. Garth was to furnish him with money, which he was to invest in lands then being entered in the Coosa district, and that the profits were to be divided between them. I do not recollect to have heard him say what profit he expected to realize in the transaction; but I heard him say that he used some of the money in entering some land, to be returned in twelve months, and that he was to receive two dollars for one; or, in other words, he had the lands transferred to him, and then sold it back for double the costs on twelve months time. I heard him say, that Gen. Garth was to furnish him with money to invest in lands, and that Garth had furnished him with money for that purpose. His declarations, to the best of my recollection, were, that Garth was interested in all the lands purchased by him, from the 1st to the 10th April, 1843, except his homestead tract." *Levi W. Lawler* testified as follows: "I do not recollect to have heard Smith say that he had formed a partnership with any one for the purchase and sale of land. He obtained the use of some money from me, say $1500 more or less, to pay out some pre-emption claims; saying at the time of the loan, that he expected to get $1500 from J. W. Garth soon, and would then refund it; which he subsequently did." *R. W. Higgins* testified as follows; "I recollect to have heard S. C. Smith say, that J. W. Garth was interested with him in some land-entries which he had made."

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, establishing the alleged contract of partnership, ordering an account, &c.; and his decree is now assigned as error.

WHITE & PARSONS, and L. WYETH, for the appellants. The three receipts, on which the plaintiff below mainly relies to establish the alleged contract of partnership, differ from each in date, terms, and legal effect; but neither one them is sufficient to establish a partnership. The contract or contracts evidenced by them show, that Garth was to have his money back, with interest, at all

events, with one half the profits, if any were realized: that he was to run no risk by the adventure; and that Smith was to be personally liable to him for the repayment of the money advanced. There were, then, two of the essential requisites of a partnership wanting—a joint fund, and a common risk. The contract was a mere loan of money.—Gow on Partnership, 14; Chase v. Barrett, 4 Paige, 148; Hesketh v. Blanchard, 4 East, 143; Meyer v. Thorpe, 5 Taunton, 74; Muzzy v. Whitney, 10 Johns. 228; Douglass, 653; 1 Campb. N. P. 329; 4 Espinasse, 182; 1 H. Bla. 37; Denny v. Cabot, 6 Metc. 82; Moore v. Smith, 19 Ala. 774; Dunham v. Rogers, 1 Penn. St. R. 255; 6 Watts & S. 139; 7 Leigh, 115; Hodges v. Dawes, 6 Ala. 215; Shropshire v. Sheppard, 3 Ala. 733; 1 B. Monroe, 160.

2. Smith cannot be held an implied trustee for Garth, as to the lands purchased with the money advanced by the latter.—Botsford v. Burr, 2 Johns. Ch. 409; Boyd v. McLean, 1 Johns. Ch. 590; White v. Jones, 3 Paige, 238.

Jas. B. Martin, and S. D. Cabaniss, contra.—1. The agreement between Garth and Smith, as established by the evidence, constituted them partners inter sese.—Collyer on Partnership, 13, 18, 83; Story on Partnership, §§ 33, 34, 44, 46; Gilpin v. Enderbey, 5 Barn. & Ald. 954, or 7 Eng. C. Law, 314; 3 Mees. & Welbs. 357; 16 John. 34; Burrows, 891; Peacock v. Peacock, 2 Camp. 25; 1 Dow. & Ry. 57.

2. If the contract did not create a partnership between the parties, the complainant is entitled to relief, under the general prayer, on the ground that Smith held these lands in trust for him.—Cruise on Real Property, 356, 428; Foster v. Trustees of Athenæum, 3 Ala. 302; Doe d. Davis v. McKinney, 5 Ala. Rep. 719; Taliaferro v. Taliaferro, 6 Ala. 404.

STONE, J.—To constitute a partnership inter sese, there must be a mutuality of risks—an interest both in the profits and losses. These risks or interests are not required to be equal; nor is it important that they shall

agree in kind. The investment may be unequal, and the parties may agree to divide the profits unequally; yet, if it be one of the terms of the contract, that each shall share in the risks and losses, and also in the profits to be realized, this constitutes them partners as between themselves. We will not attempt a collation of the authorities, but submit the following references, as sustaining the substance of these views: Waugh v. Carver, 2. H. Bla. 235; Grace v. Smith, 2 Wm. Bla. 998–1001; Hesketh v. Blanchard, 4 East, 144; Gallop v. Newman, 7 Pick. 282; Bailey v. Clark, 6 Pick. 372; Denny v. Cabot, 6 Metc. 82; 3 Kent's Com. 23–4; Addis. on Contracts, (2d Am. ed.) 721–2; 1 Parsons on Contracts, 132; Turner v. Bissell, 14 Pick, 192; Vanderburgh v. Hull, 20 Wend. 70; Hodges v. Dawes, 6 Ala. 215; Moore v. Smith, 19 Ala. 774; Burckle v. Eckhart, 1 Denio, 337 ; Lecroy v. Wiggins, at last term.

The case of Gilpin v. Enderbey, 5 Barn. & Ald. 954, (7 Eng. Com. Law, 314,) is in conflict with the principle above stated. In that case, the parties called their agreement a partnership, and formally reduced it to writing. Enderbey, in fact, incurred no risks, and was not interested in the profits. Stripped of its machinery, it was a naked loan of twenty thousand pounds sterling, for ten years, at an interest of ten per cent., to be paid semi-annually; and the principal to be refunded at the expiration of the ten years. No matter what the profits of the adventure, Enderbey's emoluments were not to be increased. No matter what the losses, he was not to share in them. A more naked and palpable loan of money, at usurious interest, cannot be conceived of. We cannot recognize this case as authority.

In the case of Morrisett v. King, 2 Burrows, 891, each party was to share in the shop-rent and materials necessary for carrying on the trade, and each was to share in the profits and losses. It is wholly unlike the case of Gilpin v. Enderbey, *supra*.

Whether persons have so acted, or held themselves out to the world, as that third persons can charge them as

partners, is a different question, which we need not now discuss.

In the case we are now cosidering, we think the character of the contract must be determined by the three receipts exhibited to the original bill. They furnish the written evidence which the parties themselves have made of their agreement; and the several oral admissions of Smith, which are put in proof, must, on well ascertained principles, be controlled by that written contract. Doubtless, he, Smith, referred to the stipulations contained in those writings, whenever he spoke of the interest of complainant in the lands purchased. Those writings are more than receipts. They are contracts, requiring Smith to repay the money with interest, and to divide the profits of the enterprise. We do not deny the ability of parties, by subsequent agreement, to change or modify the terms of their contract.—See Stoudenmeier v. Williamson, 29 Ala. We hold, however, that loose and casual conversations, made by one party apart from the other, and which make no allusion to a change of contract, cannot avail to overturn the terms of a written contract.

The first and third of the receipts, in date, disclose substantially the same contract. Each bound Smith to pay the money in twelve months, with interest, and to pay to Garth half the profits of the speculation. The receipt for four hundred dollars agrees with the other two in every respect, except that it expresses no time when the money should be repaid. We think this receipt discloses a purpose and agreement to repay the money *at all events*, whether the lands, for the purchase of which it was to be expended, should be sold or not, and independent of the contingent profit or loss at which the lands might be sold. Thus construed, each contract or writing, so far as its legal import is material in this case, is in substance the same; namely, an agreement by Smith to pay the money and interest upon it in any event, and also to pay the one-half of the profits to be realized. This, if a valid contract, secured to Garth an interest in the profits. Did it impose on him any of the risk of the adventure?

In Morse v. Wilson, 4 Term Rep. 353, Lord Kenyon

said: "The plaintiff, without having any partnership in contemplation, lent 2000l. to H. Wilson, for which he was to receive not only 5l. per cent. interest, but also such surplus profits as should arise from these two shares in the business; he himself not being bound on the other hand to make good to the partners any part of the losses which the trade might sustain. The simple question is, whether this is not an agreement to receive more than the 5l. per cent. allowed by law for the forbearance of a loan. Most unquestionably it is."

Ashhurst, J., said: "Where the principle is secured at all events, and yet more than 5l. per cent. may be got by the terms of the contract, it is usurious."

The other two judges concurred; Buller, J., remarking as a controlling reason for his opinion, that "in this agreement provision is made to receive the profits, but none to engage for the losses of the trade."

This case seems to us to be identical in principle with the one under discussion, and to define the character of this transaction as a loan of money, and not a partnership dealing.—See, also, Grace v. Smith, 2 Wm. Bla. 998, 1001; 1 Parsons on Contracts, 134.

If, by the terms of this contract, it had been stipulated that Garth should be repaid the money advanced, *out of the proceeds of the land when sold,* or out of any other *partnership or joint effects,* he would then have been involved in the risks of the adventure. In such case, a further stipulation that he should share the profits would not have been usurious. We need scarcely repeat that this contract is entirely unlike the one supposed.

[3.] Having ascertained that this transaction is nothing more or less than a loan of money by Garth, *to be repaid with interest,* it follows, that the money, when he parted with it, ceased to be his, and became the property of Smith. Hence, there is nothing in this record from which a court of chancery can imply a trust in favor of Garth. The doctrine of resulting trust rests on a presumption; and that presumption cannot be indulged, unless the party who invokes its application can show that the purchase was made with his funds.—Boyd v. McLean,

1 Johns. Ch. 582; Botsford v. Burr, 2 Johns. Ch. 405; Lewin on Trusts and Trustees, (14 Law Library,) 168; Sugden on Vendors, vol. 2, bottom p. 135; 2 Story's Eq. §§ 1201, 1201 a.

The above principles leave the complainant's claim, whatever it may be, a purely legal demand, over which the court of chancery has no jurisdiction.

The decree of the chancellor is reversed, and a decree here rendered, dismissing the complainant's bill. Let the costs of this court, and of the court below, be paid by the appellee.

WALKER, J., not sitting.