Fail & Miles v. McRee.

---

FAIL & MILES vs. McREE.

[ACTION FOR BREACH OF SPECIAL CONTRACT.]

| 36 | 61 |
| 93 | 248 |
| 36 | 61 |
| 100 | 364 |
| 36 | 61 |
| 110 | 572 |
| 36 | 61 |
| 128 | 231 |
| 128 | 232 |
| 36 | 61 |
| 129 | 197 |

1. *What constitutes partnership.*—A contract, by which the plaintiff agreed to let the defendants have all the pine timber on his lands that was suitable for good lumber, and the defendants agreed to pay him therefor, annually, in money, one-fifth of the gross proceeds of the lumber sold and collected by them, does not constitute the parties partners *inter sese.*

2. *Construction of special contract for sawing lumber; performance, and breach.*—Under a contract by which the plaintiff agreed to let the defendants have all the pine timber on his lands that was suitable for good lumber, and the defendants agreed to saw the same into lumber and sell it as soon as they could, to saw no other lumber until it was done, and to pay the plaintiff, annually, in money, one fifth of the gross proceeds of the lumber sold and collected by them,—neither the dissolution of the partnership in the mill business between the defendants, nor the sale of the mill under a mortgage executed by one to the other of them, discharges them from the further performance of their contract, which is continuous and entire, and which binds them to performance within such time as will suffice for its accomplishment by the use of a reasonable investment and effort.

3. *Damages.*—For the breach of such a contract by the defendants,
   in failing and refusing to saw all the timber on the plaintiff's land,
   but one action lies in favor of the plaintiff; in which, although the
   time of performance may not then have elapsed, he is entitled to
   recover damages for the continued and prospective failure of per-
   formance, to be assessed upon the basis of value at the time of the
   breach; and the measure of his recovery is the profits which would
   have accrued to him from the defendants' performance of their
   contract, to be ascertained by deducting the value of the timber
   left unsawed from one-fifth the value of the timber which it would
   have made.
4. *Relevancy of evidence to prove performance.*—In an action to recover
   damages for a breach of one of the stipulations of a contract, evi-
   dence showing the defendant's performance of another distinct
   stipulation is irrelevant.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. NAT. COOK.

THIS action was brought by W. F. McRee, against the
appellants, late partners doing business under the firm
name of Fail & Miles; was commenced on the 13th
March, 1857, and was founded on the defendants' breach
of a written contract between them and the plaintiff, in
the following words:

"Agreement between W. F. McRee and Jeremiah Fail
and E. J. Miles: Said McRee agrees to let said Fail &
Miles have the saw-pine—all the pine suitable to make
good lumber—on all of his land, including eighty acres
lately bought by him from J. M. Burk. Said Fail &
Miles agree to pay said McRee, annually, in clear money,
one-fifth of the gross proceeds of all sold and collected,
and that they will saw and sell said lumber as soon as
they can—no other timber will they saw until it is done.
May 21st, 1854."

(Signed by all the parties.)

The complaint alleged the following breach of this
agreement: "Plaintiff avers, that he has performed said
agreement on his part, but that said defendants have not
performed the same on their part, in this—that said
defendants did not saw all the pine suited to make good
lumber on the plaintiff's said land, referred to in said

agreement; and plaintiff avers, that defendants could have sawed all the pine suited to make good lumber on plaintiff's said land, of which there was a large quantity on said land; but said defendants, well knowing this, have nevertheless failed and positively refused to saw said pine, though specially requested by plaintiff so to do; whereby plaintiff has sustained damage," &c. The defendants demurred to the complaint, on the specified ground (with others) "that the contract declared on shows a partnership between said plaintiff and defendants, and, consequently, no action at law can be maintained thereon." The court overruled the demurrer, and the defendants then pleaded—1st, the general issue; 2d, a special plea, averring that the contract sued on created a partnership between the parties; and, 3d, performance. A demurrer was sustained to the 2d plea, and issue was joined on the 1st and 3d pleas.

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the contract declared on, after proving its execution, "and then proved that, before and at the time of the making of said agreement, he was the owner in fee of about four hundred acres of land, on most of which there was pine timber suitable for sawing; that said land was situated near a steam saw-mill, which the defendants were then erecting and about to put in operation; that said defendants, as partners, commenced to run their said mill in June, 1854, and continued so to operate it until about the 7th March, 1857, when it was sold at public auction, under a mortgage executed by said E. J. Miles to said Jeremiah Fail, and was bought at the sale by one J. W. Bridges; and that the defendants had not run or operated any other saw-mill since that time. The plaintiff further proved, that he had a conversation with Jeremiah Fail about said sale, just before it took place, in which he asked said Fail, whether, if the mill was sold, the said contract would be carried out and completed, by sawing up and selling the remaining unsawed timber upon his lands suitable for sawing; that said Fail replied, that it would not—that he should sell the said mill, and did not consider that the contract required him to do anything

more towards carrying it out; that the contract would be at an end upon the sale of said mill, and that he would not saw up any more of said timber. The proof further showed, that the partnership between the defendants was dissolved on or about the day said mill was sold as aforesaid; and that the plaintiff, after the institution of this suit, had nine hundred pine trees, suitable for sawing up into lumber, still standing upon his said lands. The plaintiff then offered to prove the value of said trees as they stood during the year 1857,—stating to the court, that the object of said testimony was to arrive at the proper measure of damages for the alleged breach of said contract by the defendants in failing and refusing to saw said pines; that he expected to prove the average value of each of said trees, the average quantity of lumber each would make when sawed up, and the market price of the lumber at the said mill; and that by deducting the value of the trees from the value of the lumber which they would make when sawed up, and estimating one-fifth of the remaining gross aggregate value of the lumber, the true measure of damages for the alleged breach would be arrived at. The court admitted the evidence for this purpose, against the defendants' objection, and the defendants excepted. The plaintiff then proved, that the average value of said trees was between fifty and sixty cents each, as they stood upon the land; that each tree would make between four hundred and fifty and five hundred feet of lumber, and that the lumber would have been worth at the mill about ten dollars per thousand feet."

"The defendants then proved, that they entered upon the execution of said agreement in June, 1854; that at the time of the execution of said agreement, as the plaintiff knew, they were building said mill as partners, and were about to start and run the same as copartners; that plaintiff's said lands were convenient and near to said mill; that the copartnership between defendants was dissolved about the time of the sale of said mill as aforesaid, and that they had run the same as copartners up to that time. The defendants also proved and read in evidence the plaintiff's receipt, dated the 5th June, 1857,

for $640, in full for his share (one-fifth) of the lumber sawed at the mill during the years 1856 and 1857. The plaintiff claimed damages only for an alleged breach of said contract by the defendants in failing and refusing to saw and sell the said nine hundred trees remaining on said lands; and the proof above set forth was, in substance, all the evidence introduced in relation to said alleged breach.

" The court thereupon charged the jury as follows:

" 1. That the legal construction of the agreement between the plaintiff and defendants was, that the plaintiff thereby obligated himself to furnish all the pine trees on his said lands suitable for making good lumber, and that the defendants obligated themselves to saw it all into lumber, and to sell the same, within a reasonable time, and to saw no other lumber until they had sawed all of the plaintiff's said timber, and then to pay him in money, annually, one-fifth of the gross proceeds of all the said lumber sold and collected; and that the defendants were bound by law, under said contract, to saw the whole of said timber within a reasonable time after the making of said contract, without any discretion on their part as to whether they would do so or not; and that this was the law, notwithstanding the proof might show that the defendants' mill had been sold under mortgage, and that they had dissolved their copartnership, and had not since carried on the business of sawing and selling lumber; and although they might further believe that the defendants, up to the time when their mill was sold and their copartnership dissolved, had fully carried out their said contract.

" 2. That if they believed from the evidence that the defendants had not, prior to the institution of this suit, sawed up and sold trees, to the number of nine hundred, standing on the plaintiff's lands embraced in the contract, but had refused to saw up the same, and had repudiated the said contract, and had refused to proceed further in its execution,—then they were guilty of a breach of their said contract; and that if the proof showed what said trees were worth, as they stood upon the lands, in 1857,

and what quantity of lumber they would have made if sawed up into lumber by the defendants under their said contract, and what said lumber would have been worth if it had been thus sawed,—then the proper measure of damages for said breach would be, one-fifth of the aggregate gross amount of the value of such lumber, after deducting therefrom the aggregate value of the trees as standing upon said lands, as shown by the proof.

" 3. That the plaintiff's receipt, which had been offered in evidence as above stated, had no relation to the alleged breach of said contract for failing or refusing to saw said trees on plaintiff's lands, if such failure or refusal was proved; and, therefore, if they believed the facts stated in this bill of exceptions to be true, said receipt should have little or nothing to do with their verdict.

" To each of these charges the defendants excepted, and then requested the court to instruct the jury, that although they might believe the facts set out in this bill of exceptions to be true, yet, if there was no evidence showing, or tending to show, that the defendants could, before the commencement of this suit, in the ordinary progress of such a business at a saw-mill, have sawed up the said trees into lumber,—then, according to the measure of damages ruled by the court (in its second affirmative charge) to be correct, they cannot find for the plaintiff. The court refused to give this charge, and the defendants excepted."

The rulings of the court on the pleadings, on the evidence, and in the charges given and refused, are now assigned as error.

WATTS, JUDGE & JACKSON, for appellants.

D. W. BAINE, with ALEX. WHITE, contra.

A. J. WALKER, C. J.—The only objection taken in the defendants' demurrer, which is applicable to the complaint as amended, is, that the agreement between the plaintiff and defendants created a partnership. The same question is also raised by the defendants' second plea. Hence, the overruling of the demurrer to the complaint,

and the sustaining of the demurrer to the 2d plea, present the single point, whether a partnership resulted from the agreement between the parties.   The agreement gives to the plaintiff one-fifth of the gross proceeds of the sales of lumber, as a compensation. for the timber supplied; and, upon principles settled in Moore v. Smith, (19 Ala. 774,) does not constitute the parties partners *inter sese*.   The rulings of the court upon the pleadings were, therefore, correct.—Smith v. Garth, 32 Ala: 368.

[2.] It was an obligation of the defendants, under the contract, to saw all the pine timber on the plaintiff's land, suitable for making good lumber, as soon as they *could*, and to saw no other timber until they had done so.   There is no reservation to the defendants of a discretion, as to whether they should comply with those obligations; nor is the duty of compliance with them made to depend upon a continuance of the partnership; nor is there anything in the terms of the contract, which absolves the defendants from their obligation upon a sale of their mill under a mortgage.   To give the contract such an effect, would be inconsistent with the mutuality of duty which it was the design of the contract to create.   The obligation to allow the timber to be taken, and the obligation to take and saw it, are reciprocal; and, as the plaintiff had no discretion as to whether he would supply the timber, and no authority to discontinue the supply in any given contingency, so the defendants could have no discretion as to whether they should take the timber, and no legal right, in either of the contingencies above specified, to cease to take it.   There being no specified time for the performance of the contract on the part of the defendants, the law implied an obligation to perform within a reasonable time, to be determined in the light of all the circumstances.   When the contract says, that the defendants should perform their contract as soon as they *could*, it means, neither that they should perform it as soon as it was physically possible by the aid of every conceivable means promotive of expedition, nor within such time as would suit their interest, convenience or inclination; but, within such time as would suffice for its accomplishment

by the use of a reasonable investment and effort.—Garnett v. Yoe, 17 Ala. 74; Watts v. Sheppard, 2 ib. 425; Dickson v. Briggs, 12 ib. 217; Allen v. Green, 19 ib. 34; Skinner v. Bedell, 32 ib. 24; Drake v. Goree, 22 ib. 209; Adams v. Adams, 26 ib. 272; Hussey v. Roquemore, 27 ib. 281; Wolfe v. Parham, 18 ib. 441.

The refusal of the defendants to proceed with their contract, according to its requisitions, was certainly a breach of it, and gave rise to an immediate cause of action in favor of the plaintiff.—Davis v. Ayres, 9 Ala. 292; George v. Cahaba & Marion R. R., 8 ib. 234; Ramey v. Holcombe, 21 ib. 567; Fowler & Prout v. Armour, 24 ib.194. The contract on the part of the defendants was continuous in its character; it was also entire, and the performance is not by the contract divided—different parts assigned to different periods of time.

[3.] For the breach of such a contract, but one action lies, and the plaintiff must recover in a single action his entire damages.—Ramey v. Holcombe, 21 Ala. 567; Snedicor v. Davis, 17 ib. 472; Sedgwick on the Measure of Damages, 224. Notwithstanding the period of performance had not expired at the time of the breach of the contract, and at the time of action brought, the plaintiff must recover in the single action the damages which would result from the continued and prospective failure of performance, for he cannot bring a second action. Perhaps, if the time within which the contract might have been performed had elapsed before the trial, and the amount of performance which would have transpired each year could have been ascertained, the value of the timber and lumber which would have been consumed and sold each year, estimated as of that year, would have been adopted in determining the damages; and thus injury to either party from fluctuation in value would have been avoided. But, as this case is not shown to have presented such features, the damages ought to be assessed upon the basis of value at the time of the breach. The authorities, which we cite below, fully sustain our propositions, as to the plaintiff's right to recover the prospective damages, and as to the time for taking the estimate of damages.

Sedgwick on the Meas. of Damages, 225–226–227–228–229; Seaten v. Second Municipality of New Orleans, 3 Ann. (La.) 44; Masterton v. Mayor, &c., 7 Hill, 61; New York & Harlem R. R. v. Story, 6 Barb. S. C. R. 419; Shaffer v. Lee, 8 *ib.* 412.

The measure of the plaintiff's recovery was, the profits which he lost by the refusal of the defendants to perform their contract; and those profits are to be ascertained, by deducting the value of the timber from one-fifth the value of the lumber which he would have received, if the contract had been performed.—Ramey v. Holcombe, *supra;* George v. Cahaba R. R., 8 Ala. 234.

[4.] The action was brought to recover damages for the breach of the contract by a refusal to continue to perform it, and not to recover a sum of money, which was due on account of the use of timber in the past performance by the defendants. The plaintiff's receipt, showing a payment to him for timber which had been taken in the past performance of the contract, was irrelevant.

Judgment affirmed.