# Mason *v.* Alabama Iron Company.

*Action for Breach of Contract.*

1. *Contracts; rule of construction.*—In the construction or interpretation of all contracts, oral or written, the object is to ascertain, and, if possible, to effectuate the intention of the parties, so that performance may be enforced according to the sense in which they mutually understood it at the time it was made; and it is necessary to read and examine the mode in which the contract is expressed, to consider the situation of the parties, the subject-matter, and the object it is intended to accomplish, and to take into consideration, and, if possible, to give effect to every word and clause.

2. *Contract construed.*—The Alabama Iron Company, owning a tract of land on which was timber suitable for making charcoal, and desiring to convert all available timber into charcoal, entered into a written contract with M., by which the latter after undertaking to convert the timber into charcoal, and to deliver it to the company, agreed to "commence delivering said coal as soon as he can get ready to do so, by commencing work at once, and pushing the job as fast as he can, and to send six hundred bushels each and every day after commencing to send coal, Sundays and extreme rainy days only excepted, until all the timber on said land is made into charcoal and sent in." And the company, after promising to pay four cents per bushel for the charcoal delivered, agreed "to pay as follows: As fast as the work progresses in said job, and the charcoal is delivered as before specified, to furnish corn and supplies from their store at Alabama Furnace, necessary to carry on said job of coaling, at their

[Mason v. Alabama Iron Company.]

regular selling prices. And the said M. agrees that he and all employed in said job will get all their supplies of every kind from the store of the said Alabama Iron Company, as before mentioned. The said Alabama Iron Company does not agree to pay much, if any money as the job progresses, but what money may be cleared in said job by said M. at the completion of said job will be due." *Held*, in a suit by M. against the company for a breach of the contract, that the contract imposed on the company the duty to furnish M. and his employees with corn and supplies necessary to carry on the work, not only while the charcoal was being delivered, but while M. was engaged in doing and having done work which was necessary and contemplated to be done, before there could be a delivery of the coal; and that a refusal by the company to so furnish corn and supplies, not justified by a default on the part of M., was a breach of the contract, giving to M. an immediate cause of action.

3. *When only one action lies for breach of contract.*—For the breach of such contract only one action lies, in which the plaintiff must recover his entire damages, though the period of performance has not expired at the time the action is commenced.

4. *Action for breach of contract; measure of damages.*—The measure of damages which the plaintiff is entitled to recover in an action on such contract, is the profits which he could have secured, if he had been permitted to perform the contract; and hence, evidence of expense incurred by the plaintiff in building houses on the land for the occupancy of himself and employees, and in bringing the employees to the land, is inadmissible.

5. *Admissibility of evidence on cross-examination.*—On the cross-examination of a witness, he may be asked as to his interest in the suit, and as to his relations with the party introducing him; but, it being shown that the witness was in the party's employment, the amount of salary paid him by his employer is not a fit subject of inquiry.

Appeal from Talladega Circuit Court.

Tried before Hon. John Henderson.

This suit was brought by A. W. Mason against the Alabama Iron Company, a body corporate, to recover damages for the breach of a contract in writing, made between the parties, the provisions of which, necessary to this report, are sufficiently stated in the opinion. The contract is set out, *in hæc verba*, in the complaint, and it is averred that the plaintiff, on his part, has complied with all its provisions. The breaches assigned are five in number, of which it is only necessary, under the view taken by this court of the case, to set out two, the second and fifth, which are as follows: " 2. The defendant has failed and refused, as the work progressed in said job under said contract, to furnish corn and supplies to the plaintiff from the defendant's store at Alabama Furnace, necessary to carry on said job of coaling, as the defendant undertook and agreed to do under and by said contract; and the defendant has failed and refused to furnish to the plaintiff from any source said corn and supplies; and the plaintiff, by reason of such failure, has been stopped in his work of making into coal, under said contract, the timber" on the land mentioned in said contract, " being precluded by the terms of said contract from purchasing corn and supplies to carry on said work from any other person than

[Mason v. Alabama Iron Company.]

the defendant, or at any other place than the defendant's store at Alabama Furnace." "5. The plaintiff, on or about the 20th day of April, 1879, was put in possession of the timber" on the land described in said contract, "and from and after said day, and until the — day of May, 1879, he did a large amount of work in the way of preparing to manufacture said timber into charcoal under said contract, viz: He brought from a distance, and employed in said work seven laborers, skilled in the business of manufacturing charcoal; he erected or caused to be erected on said land six houses for himself and family, and said laborers and their families to reside in; he cut and split, or caused to be cut and split of said timber about seven hundred and thirty cords of wood; he placed in pits ready for burning, or caused to be so placed about two hundred and ninety cords of said wood; and he made or caused to be made twelve hearths, on which to place in pits the wood to be burned into charcoal,—all under said contract, and at a great labor and expense to the plaintiff; when, on said last named day, viz., on or about the — day of May, 1879, the defendant, without fault on plaintiff's part, refused to furnish him the corn and supplies necessary to carry on the work under said contract, as by said contract the defendant had undertaken and agreed to do; and, plaintiff having no means to purchase said corn and supplies, and being precluded by the terms of said contract from purchasing them elsewhere than at defendant's store at Alabama Furnace, his laborers left him, and said work was thereby stopped; and afterwards, on or about the — day of June, 1879, the defendant, against the will and earnest protest of plaintiff, and in violation of said contract, took from him the possession of the timber on said land, and the wood, hearths and cabins aforesaid. and turned the plaintiff and his family out of doors late in the evening, thereby forcing him and his wife and children to take shelter in a church near by for the night. All of which was and is to the great damage of plaintiff," etc. To these breaches the defendant demurred, assigning several grounds, and the demurrer to each of said breaches was sustained by the court.

On the trial, among other things, the plaintiff offered to prove the expense he had incurred in building houses on the land mentioned in the contract for the occupancy of himself and employees, and in bringing the employees to the place; but, on defendant's objection, the court refused to allow this proof to be made, and the plaintiff excepted. On cross-examination of one Glidden, a witness examined in chief by the defendant, the plaintiff, after showing by him that he was in the defendant's employment, asked him what amount of salary the defendant paid him for his services. To this question the defendant objected, the objection was sustained, and the plaintiff excepted.

[Mason v. Alabama Iron Company.]

The second charge given by the court at the defendant's request, referred to in the opinion, is in these words : " The plaintiff, under his contract with defendant, would have no right to demand supplies from defendant's store, until he had delivered some coal under the contract ; and if the jury believe from the evidence, that plaintiff did not, during the time he had possession of said job, deliver any coal under said contract, but held possession of the same from the 14th May to the 26th June, 1879, without doing any work on said job, or making any effort to coal the timber thereon into coal ; and if defendant performed its part of the contract, then defendant would be justified in resuming possession of said job." To this charge the defendant excepted.

The rulings above noted are among the errors here assigned.

PARSONS & PARSONS, for appellant.  (1) The circuit court ruled that the appellant was not entitled to supplies from the company under the contract, until he should commence to deliver charcoal at the rate of 600 bushels per day.  This ruling was erroneous.  As to the proper construction of the contract, the following authorities were cited : 1 Brick. Dig. p. 386, § 161 ; *Reid v. Edwards*, 7 Porter, 508 ; *Acker v. Bender*, 33 Ala. 234 ; *Bates v. Bank*, 2 Ala. 451 ; 2 Pars. on Con. pp. 547–8, 564.  (2) The refusal to allow the appellant to show what it had cost him to bring his hands from Jefferson county and build houses, etc., was erroneous.  This expense was necessary, and its loss was the proximate and natural result of the breach, of the contract complained of ; and such loss was a part of the damage resulting to plaintiff from the breach.—*Murrell v. Whiting*, 32 Ala. 54 ; *Rose v. Bozeman*, 41 Ala. 678. The appellant was entitled to recover such damages as were the natural and proximate consequence of the breach ; and it was error to refuse to allow the evidence to go to the jury. See 24 Ala. 194 ; 9 Ala. 292 ; 37 Ala. 274 ; 11 Ala. 375.  (3) The court erred in refusing to require Glidden to answer as to the salary he received from the defendant.  The evidence tended to show the witness' interest in the result of the suit, and was for that reason competent.

Name of appellee's counsel not disclosed by the record, and no brief came to the hands of the reporter.

BRICKELL, C. J.—The argument of counsel concedes that the material question, decisive of the case, is, whether the contract into which the parties entered imposed on the defendant the duty of furnishing the plaintiff with corn and supplies, while he was engaged in performing the contemplated work,

18

[Mason v. Alabama Iron Company.]

though not delivering coal; or whether the·duty rested on the defendant only while the plaintiff was engaged in the delivery of coal. The question is to be solved by an examination and interpretation of the contract, which is in writing.

In the construction or interpretation of all contracts, oral or written, the object is to ascertain, and, if possible, to effectuate the intention of the parties, so that performance may be enforced according to the sense in which they mutually understood it at the time it was made. It is necessary not only to read and examine the mode in which the contract is expressed, but to consider the situation of the parties, the subject-matter, and the object it is intended to accomplish.—1 Brick Dig. 383, § 161. And every word and clause must be taken into consideration, and, if possible, have some effect given to it.—*Heywood v. Perrin*, 10 Pick. 228.

Applying these elementary principles to the contract made by these parties, and we have but little hesitation in reaching the conclusion, that upon the defendant is devolved the duty of furnishing the plaintiff corn and supplies, not only while he was engaged in delivering coal, but also while he was engaged in doing the work necessary and contemplated to be done, before there could be a delivery.

The defendant owned, or was possessed of two parcels of land, one containing one hundred acres, and one containing thirty acres, and was desirous to convert into charcoal all suitable timber upon the lands. The duty imposed on the plaintiff by the contract is the conversion of the timber into charcoal, and its delivery to the defendant. A stipulation on his part is (to follow the words of the contract) to "commence delivering said coal, as soon as he can get ready to do so, by commencing work at once, and pushing the job as fast as he can, and to send six hundred bushels each and every day after commencing to send coal, Sundays and extreme rainy days only excepted, until all the timber on the said one hundred and thirty acres of land is made into charcoal and sent in." From the very nature of the duty, there must of necessity be a period of time while the plaintiff was engaged in its performance, that, without any want of diligence on his part, he could not possibly make a daily delivery of the quantity of coal it was stipulated he should deliver. The timber must be cut, kilns, or ovens for charring it must be constructed, and other labor done, requiring not only the services of the plaintiff, but of others whom he might employ. While engaged in this service, the plaintiff would be in the performance of the duty he had assumed, as strictly and essentially, as while engaged in the delivery of coal. This the parties clearly contemplated, and therefore the stipulation is, not that there shall be an immediate delivery of coal, or that

delivery shall be commenced at any certain or fixed time, but that the plaintiff must at once commence work, and as soon as he could by "pushing the job" commence the delivery of coal. It was a duty or service which was made up of parts which must be performed at different times, and some of which must in performance precede others, the parties contemplated, and for which they were contracting. In the performance of the service it was expected and intended that the plaintiff would employ the assistance of others, and therefore it was stipulated that he should not employ any one who was objectionable to the superintendent of the defendant.

In consideration of the performance by the plaintiff of the service and duty, in the manner prescribed by the contract, the defendant stipulated, first, to pay four cents per bushel for the charcoal delivered. To follow again the words of the contract: "And the said Alabama Iron Co. agrees to pay as follows: As fast as the work progresses in said job and the charcoal is delivered as before specified, to furnish corn and supplies from their store at Alabama Furnace necessary to carry on said job of coaling at their regular selling prices. And the said Mason agrees that he and all employed in said job will get all their supplies of every kind from the store of the said Alabama Iron Co., as before mentioned. The said Alabama Iron Co. do not agree to pay much, if any money, as the job progresses, but what money may be cleared in said job by said Mason at the completion of said job will be due." It is to be observed of this clause of the contract, that it manifestly distinguishes between the payment of money for the coal delivered, and the furnishing of corn and supplies necessary to carry on the work. There was no right on the part of the plaintiff to demand money, except as the work progressed and the charcoal was delivered, as delivery was specified in the contract. There could be no delivery unless the work was in progress, and until delivery and the measurement of the coal, there could be no ascertainment of the money due or owing. Therefore, the stipulation is for the payment of money only as the work progressed and charcoal was delivered. And for its own protection the clause is inserted, that the defendant does not agree to pay much, if any, money as the job progresses. The stipulation as to furnishing corn and supplies is essentially different—these are to be furnished as it may be necessary to carry on said job of coaling. The job was being carried on, the work was in progress, while the plaintiff was engaged in cutting timber, constructing kilns and ovens, and doing other work necessary to convert the timber into coal—work which must be done before the coal could be produced. The work required the assistance of others whose wants and necessities

[Mason v. Alabama Iron Company.]

must be supplied, and who, as well as the plaintiff, were bound to obtain their supplies from the store of the defendant.

There is no limitation as to the amount or character of the supplies other than they must be such as are necessary to carry on the work—no limitation akin to that in reference to the payment of money. The duty of furnishing the supplies resting upon the defendant, and the duty resting upon the plaintiff and his employees to obtain them only from the store of the defendant, are reciprocal—the one can not exist without the other. It could hardly be insisted that the plaintiff and his employees, while engaged in the work which necessarily precedes the delivery of the coal, were at liberty to purchase supplies elsewhere than from the store of the defendant. Not having that liberty, it is but fair and reasonable that the duty of furnishing the supplies necessary to carry on the work should rest upon the defendant. Such, it seems to us, must have been the sense in which the parties understood the contract when it was made. From the very nature of the work, there would be a period of time when it would be in progress, and when supplies would be necessary to continue it, before coal could be made; and therefore the parties intended, as they have stipulated, that the supplies should be furnished. If we were to adopt the construction of the contract insisted on by the defendant, that the supplies were to be furnished only as money was to be paid—"as the work progresses and charcoal is delivered," we do not see what force or meaning can be given to the stipulation that they were to be furnished as necessary to carry on the work. Nor can any reason be assigned for expressing in different language the obligation and duty to make payments of money, and the obligation and duty to furnish supplies. The words of the contract to which we have referred, can not be rejected. They were not introduced thoughtlessly or carelessly, for it is obvious the contract was drawn with care and deliberation. We repeat our conclusion, that the contract imposed upon the defendant the duty to furnish the plaintiff and his employees with corn and supplies necessary to carry on the work, not only while the charcoal was being delivered, but while the plaintiff was engaged in doing and having done work which was necessary in carrying out the object of the contract, the conversion of the timber into coal. A refusal of the defendant to furnish corn and supplies, not justified by a default on the part of the plaintiff, was a breach of the contract, giving to the plaintiff an immediate cause of action.—*Fail v. McRee*, 36 Ala. 61; *George v. C. & M. R. R. Co.*, 8 Ala. 234; *Drake v. Goree*, 22 Ala. 409.

For a breach of the contract but one action lies, in which the plaintiff must recover his entire damages, though the period of performance has not expired at the time the action is commenced.

[Baker v. Trotter.]

*Fail v. McRee, supra ; Ramey v. Holcombe,* 21 Ala. 567.   The measure of recovery to which the plaintiff is entitled, according to former decisions, is the profits which he could have secured if he had been permitted to perform the contract.—*Fail v. McRee, supra ; Ramey v. Holcombe, supra.*   The circuit court did not err, therefore, in excluding evidence of the expense of building houses on the lands for the occupancy of the plaintiff and his employees, or of the expense incurred in bringing the employees to the lands.

Upon cross-examination, the plaintiff could properly inquire of the witness Glidden as to his interest in the suit, and his relations to the defendant.   The fact of interest and his relations to and with the defendant may justly be considered by the jury in determining his credibility.   But the amount of salary paid to him by the defendant for services rendered is not a fit subject of inquiry.

The result is, the circuit court erred in sustaining the demurrer to the second and fifth breaches assigned in the complaint, and in giving the second instruction requested by the defendant.   These are the questions to which the argument of counsel have been directed, and we do not deem it necessary to consider any others which may be presented by the record.

Let the judgment be reversed and the cause remanded.