[Gulf City Shingle Manufacturing Co. v. Boyles.]

# Gulf City Shingle Manufacturing Co. v. Boyles.

## Action of Trover.

1. *Partnership; when not shown to exist.*—Where there is a settlement or compromise of a suit involving the title to lands by an agreement between the parties thereto, by the terms of which the timbers upon the said lands were to be cut by one of the parties and sold by him, and after paying out of the proceeds of the sale the expenses for so cutting and selling the timber, the net profits were to be divided equally between the parties, such agreement does not constitute a partnership *inter sese*; there being shown no community of risks, and neither party being bound to contribute to the expenses or losses of the other.

2. *Same; same.*—In such a case, the fact that a merchant, who entered into an agreement with said parties to supply them with groceries needed for laborers in getting the timber from the land, charged the account so made to said parties as a firm, does not show that a partnership existed between them; it being manifest from the undisputed evidence that the designation of the said parties as a firm was merely for the purpose of identification of the business transaction, and was used simply as the means of keeping an account of the expenses.

3 *Trial and its incidents; when charge on the effect of the evidence ex mero motu without injury.*—While it is error for the court to charge upon the effect of the evidence without being requested thereto (Code, § 2336), still if such charge is given *ex mero motu*, and the same instruction is subsequently and rightly given at the request in writing of one of the parties, the error is cured, and the charge given *ex mero motu* is without injury.

4. *Trover; variance.*—In an action of trover, where the complaint claims damages for the conversion of "the undivided one-half interest in fifty-seven cypress logs containing 2,284 cubic feet," and the evidence of both parties shows that the timber involved in the controversy contained 2,284 cubic feet, there is no material variance, although the evidence of the plaintiff and the defendant tended to show a different

[Gulf City Shingle Manufacturing Co. v. Boyles.]

number of logs. The gist of such action being for the con-
version of the cubic feet of timber, the number of the
alleged logs might be stricken without taking from the com-
plaint a fact essential to the cause of action.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN C. ANDERSON.

This was an action of trover brought by Fannie
A. Boyles, the appellee, against the Gulf City Shingle
Manufacturing Company, a corporation, seeking to re-
cover damages, as alleged in the complaint, for the
wrongful conversion by the defendant of the "undivided
one-half interest of the plaintiff in 57 cypress logs, con-
taining in all about 2,284 cubic feet, the property of
plaintiff." Issue was joined upon the plea of the gen-
eral issue. The facts of the case are sufficiently set
forth in the opinion.

Upon the introduction of all the evidence the court
in its oral charge instructed the jury, among other
things, as follows: "I charge you the facts are uncon-
troverted, the plaintiff owned one undivided one-half
interest in this property." The defendant separately
excepted to this portion of the court's oral charge, and
also separately excepted to the following portion of
the court's oral charge: "I charge you that no part-
nership existed under the law, and Archie Slaughter
would not have had the right to have disposed of the
property as a partner."

At the request of the plaintiff, the court gave to the
jury the following written charges: (1.) "The court
charges the jury that in order for the defendant to de-
feat a recovery upon the ground that the plaintiff held
out Archie Slaughter as her partner, the proof must
reasonably satisfy you that such holding out was known
to the defendant at the time that it purchased the logs
in controversy and that defendant was misled in such
transaction by such holding out." (2.) "The court
charges the jury that under the undisputed evidence
in this case the plaintiff was not a partner with the
witness, Archie Slaughter, and that said witness, Archie
Slaughter, would not by his acts or declarations, which
were not known to, approved by, or acquiesced in, by

13

the plaintiff, bind the plaintiff in any manner." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give the following written charges requested by it: (1.) "The court charges the jury that under the evidence in this case Archie Slaughter had the right to sell the logs in question in this case to the defendant." (2.) "The court charges the jury that if they believe from the evidence that the plaintiff and the three Slaughters had a contract between themselves by which the logs in question were to be sold and they were each to participate in the profits realized after deducting the expenses of getting the logs out, then the jury should find for the defendant." (3.) "The court charges the jury that if they believe all the evidence, they should find a verdict for the defendant."

There were verdict and judgment for the plaintiff, assessing her damages at $132. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

GREGORY L. & H. T. SMITH, for appellant.—The court erred in the charges given *ex mero motu* and at the request of the plaintiff. There was much evidence which should have been submitted to the jury, as tending to show that even between the parties to the trade Slaughter should be regarded as a partner.—*McNeil v. Reynolds,* 9 Ala. 313; *Henderson v. Perryman,* 114 Ala. 655; 17 Am. & Eng. Ency. of Law (old ed.), 1317.

When there is no express contract to the contrary, those who are to share the profits, if any, must also bear the losses, when they appear. Speaking of this subject, in *McDonnell v. Battle House Co.,* 67 Ala. 90, BRICKELL, C. J., said: "It is sometimes true, that contrary to their intention, persons become partners as to third persons dealing with them, when they do not intend to form that relation. This occurs in that large class of cases when there may not be a community of interest in the property or capital employed in the particular business; yet one of those engaged in it has a specified interest in the business as profits, a clear right to participate in the *net profits.* This, by construc-

tion of law, creates a partnership, for the reason as was said by DeGray, C. J., that every man who has a share in the profits of a trade ought also to bear his share in the loss. And if any one take part of the profits, he takes part of that fund on which the creditor of the trader relies for payment."—*Chisholm v. Cowles,* 42 Ala. 180.

Stevens & Lyons, *contra.*—It is well settled that if one tenant in common of a chattel sell the entire property, it is a conversion for which trover may be maintained by the co-tenant.—*Perminter v. Kelly,* 18 Ala. 716; *Smythe v. Tankersly,* 20 Ala. 212; *Cowles v. Garrett,* 30 Ala. 350; *Sullivan v. Lawler,* 72 Ala. 74.

There being no dispute as to the terms of the agreement, the question of partnership *vel non* is for the court.—*Kingsberry v. Tharp,* 61 Mich. 223; *Chisholm v. Cowles,* 42 Ala. 179; *Drennen v. Smith,* 115 Ala. 403.

The substance and effect of this agreement was that the Slaughters were to have one-half of the net proceeds derived from the sale of the logs as compensation for whatever might have been their interest in the standing trees. Such sharing in the proceeds of an enterprise is never sufficient to constitute a partnership.—*Nelms v. McGraw,* 93 Ala. 245; *Moore v. Smith,* 19 Ala. 774; *Fail v. McKee,* 36 Ala. 61.

The error committed by the court, if it was error, in charging upon the effect of the evidence *ex mero motu* was cured by a subsequent charge given at the request of the plaintiff.—*Pleasants v. Erskine,* 82 Ala. 386.

HARALSON, J.—1. The facts out of which this suit grew were, that the plaintiff claimed under a tax deed the land from which the timber in question was cut, which land the Slaughters—Howard, Archie and Dupree—claimed to own. Litigation was pending in the chancery court between the plaintiff and the Slaughters about the land, and a settlement or compromise of the suit was effected by an agreement entered into by T. H. Boyles, representing the plaintiff, as her agent, and Howell Slaughter, representing the Slaughters, by the

terms of which agreement, the cypress timber in question was to be gotten out from said land by said Boyles and sold by him, paying out of the proceeds the expenses for so doing, and dividing the net proceeds equally between Mrs. Boyles and the Slaughters,—one-half going to the one and one-half to the others.

The evidence tends to show that T. H. Boyles, the plaintiff's husband and agent in the transaction, got the timber out and had it brought to Mobile and delivered to J. B. Stiggins, a lumber agent, for sale, at its market price. It also tends to show, that Archie Slaughter, some two months before this, as deposed to by Dr. Tunstall, the president of the defendant corporation, sold the timber to said Tunstall for the defendant, and after it was delivered to said Stiggins by said Boyles said Archie gave an order on Stiggins to deliver it to defendant, which he did. The contention of the defendant is, that this sale passed the title of the timber to it, on two grounds; 1st, that by the terms of said agreement, there was a partnership between the plaintiff and the Slaughters, and if so, Archie Slaughter had the full power and authority to sell the timber to defendant; and, 2d, that whether a partnership existed between them or not, said Archie, by the terms of the agreement, had the right as well as plaintiff's said agent, T. H. Boyles, to sell the same to defendant. The plaintiff disputes both propositions, contending that the arrangement between her and the Slaughters did not constitute them partners *inter sese*, bestowing authority on any partner to sell the timber, but was one merely for the sale and division of the proceeds of property owned jointly by her and the Slaughters; and that Archie Slaughter had no power by virtue of any special authority from her to sell the property to defendant.

2. Under the evidence, we have no difficulty in holding that the arrangement between the parties did not constitute a partnership between them. Whether a partnership exists, ever, between persons, growing out of a joint enterprise between them, must be determined by their intentions in entering into the agreement to carry it out; for a partnership cannot exist between

[Gulf City Shingle Manufacturing Co. v. Boyles.]

parties unless such was their intention. The usual tests, as has been said, "are community of risks,—mutual though not equal participation in the profits and losses; but participation in profits alone is not necessarily decisive proof of partnership. There are exceptions to the general rule. A person may be interested in, or receive a part of the profits of a business, without becoming a partner."—*Nelms v. McGraw,* 93 Ala. 245. The common undertaking or enterprise in this case, was not to realize profits, or in which there was to be a community of profits and loss, and neither party was to contribute to the expenses or losses of the other. They stipulated for the performance of certain acts in a single matter,—that of cutting and marketing certain trees on land,—without expense or cost to each other, further than that all expenses were to be deducted from the proceeds of the sale of the timber; the purpose being to compensate plaintiff for her claim to the land, which she was asserting under a tax deed, and leave the title in the Slaughters unembarrassed by plaintiff's claim. In other words, it was a purchase by the Slaughters of plaintiff's title to the land, to be paid for, by her cutting certain trees therefrom and selling the same, dividing the proceeds of sale between herself and the Slaughters, after she had paid all expenses of cutting and marketing the timber. This was her compensation for yielding her title. The general rule is, as was said in *Nelm's case, supra,* that sharing in the profits as a mode of compensation for property furnished, does not constitute a partnership between the contracting parties, and that a provision in an agreement, that the proceeds of the lumber were to be divided, after paying the expenses of hauling and loading on the cars,—the freight charges, and other expense of selling,—was not sufficient of itself to constitute the parties partners.—*Moore v. Smith,* 19 Ala. 774; *Fail v. McRee,* 36 Ala. 61; *Pulliam v. Schimpf,* 100 Ala. 362.

3. The evidence shows, that T. H. Boyles, plaintiff's agent, and Howard Slaughter, representing the Slaughters, entered into an arrangement with a Mr. Feist to supply them with groceries needed for laborers in

getting the timber out from the lands. Mr. Feist was examined by defendant, and as to this testified, "that (he), the witness, furnished groceries to Messrs. Boyles & Slaughter to supply them in getting out timber from the lands which were the subject matter of litigation between Messrs. Slaughter and Mrs. Boyles; that Mr. Boyles told the witness that he would send some orders there, he and Slaughter, and to fill the orders; that Mr. Boyles and Mr. Howard Slaughter came to his place of business to make the arrangement in regard to it, and that, on that occasion told the witness that he (Boyles) and Mr. Slaughter were going to get out some cypress which was the subject matter of the litigation between the Slaughters and Mrs. Boyles, and he would send some orders, either he or Howard Slaughter, either one; that he subsequently received some orders, but he could not tell how many; that the orders were destroyed, all of them but one;" that the one not destroyed read: "Mr. Feist: Let John Tunstall have one dollar in trade, and charge to Slaughter & Boyles. Oct. 9. 99. T. H. Boyles."

Mr. Boyles testified for plaintiff, that he made arrangements with Howard Slaughter by which he was to get out the timber from the lands; that he bought goods from Mr. Feist, during the time that he was getting out these timbers and gave the hands orders on him for the goods purchased to be charged to Slaughter and Boyles; that he went to Mr. Feist's store in company with Mr. Howard Slaughter and stated to him, that he was making arrangements to get out this cypress; that he told him that Messrs. Slaughter and Boyles, or Messrs. Slaughter and his, witness', wife, were going to get out some timber, but did not tell him they were partners; that Mr. Feist knew that Slaughters and he had compromised their pending litigation, and the account was just for the orders to hands that were working on that particular cypress, for the expense of getting it out, etc.

While the use of the name Slaughter & Boyles might, ordinarily, tend to show a partnership, yet it is manifest from the undisputed evidence, that as used in this instance it was merely for the purpose of identification

of the particular transaction to which it had reference, and was used simply as a means of keeping an account of the expenses for getting out the timber, so far as paying the hands off in money or supplies went. The particular purpose for which the name was used, as explained in the evidence, without more, did not show or tend to show a partnership, which the whole evidence, without conflict, disproved.

4. The parts of the charge of the court *ex mero motu*, to the effect that under the evidence there was no partnership between the parties, and the relation which existed between the plaintiff and the Slaughters under the contract would not be sufficient to enable [Archie] Slaughter to have disposed of the property, was upon the effect of the evidence forbidden by section 3326 of the Code. But, the court afterwards, at the request of the plaintiff, in charges given, which were correct in themselves, instructed the jury to the same effect as it had instructed them in its *mero motu* charge, and the errors in this charge were thereby cured. At most, they were errors without injury.—*Pleasants v. Erskine,* 82 Ala. 386.

From what has been said, it will appear, that charges requested by defendant were properly refused.

5. The complaint was for the conversion of the undivided half interest of the plaintiff in 57 cypress logs containing 2,284 cubic feet. The evidence for the plaintiff tended to show that there were 57 logs, and that of defendant that there were 54; but the evidence of each showed that there were 2,284 cubic feet in the lot as alleged in the complaint, one-half of which was charged to have been converted. The gist of the action was for the cubit feet converted, and the value of the property was ascertainable by the number of cubic feet, and not by the number of logs. This number might be stricken without ridding the complaint of a fact essential to the cause of action. It is only when this cannot be done, that the fact must be retained and proved, though it be described with unnecessary particularity.—*Johnson v. Whitfield,* 124 Ala. 508; *Gilmer v. Wallace,* 75 Ala. 220; 1 Gr. Ev., §§ 61, 63, *et seq.*

The alleged variance, if there was one as to the number of logs, was immaterial.

Affirmed.