# Electric Lighting Co. of Mobile *v.* Elder Bros.

### *Action for Breach of Contract.*

1. *Rules for construction of contract; intention of parties.*—The prime object in construing contracts is to ascertain and effectuate the intention of the parties, and in ascertaining such intention the instrument itself must not only be examined, but due consideration must be given to the situation of the parties, the subject matter of the contract and the object it is intended to accomplish, and every clause and word must be taken into consideration, and given some meaning and effect, if possible, not repugnant to its other terms.

2. *Same; expression of conditions.*—Where certain conditions are expressed in a contract, the presumption is that all others are excluded, and the express stipulations can not be changed by implication.

3. *Same; contract for the boring of an artesian well; when contract performed.*—Where a contract for the boring of an artesian well provides that the well shall be of certain dimensions and certain capacity, that the workmanship and materials used in the construction of the well shall be first-class, and that the materials and labor is to be at the expense of the contractors, and it is further provided that "the water flowing from said well is to be deep strata water, and no strainer will be placed to obtain a flow from intermediate or intervening strata, as water flowing from that source is likely to be of such quality as is not adapted to the use" for which the well is bored, the party for whom the well is bored assumes the risk that the deep strata water will be of a suitable quality for his purpose ; and if after

[Electric Lighting Co. of Mobile v. Elder Bros.]

the whole work is completed in substantial compliance with the requirements of the contract, there is obtained a flow from deep strata of the specified quantity, such party can not avoid the payment to the contractors of the amount agreed on, upon the ground that the water supplied by the well was of a quality unfit for the use for which the well was bored.

4. *Same; same; when payment can be demanded.*—The provision in such a contract that "thirty days after the said completion of the well aforesaid mentioned, and compliance with the conditions" of the contract, the party for whom the well was bored will pay the contractor, means that payment of the stipulated compensation is to be contingent upon the party for whom the well is bored being satisfied that the well of the stipulated size has been completed, that the workmanship and materials used were first-class, that the water reached by the well was deep strata water, having a continuous flow of the quantity specified, no strainer being used to obtain a flow from intermediate or intervening strata; and such provision of the contract does not make the payment contingent on the person for whom the well was bored being satisfied with the quality of the water supplied, and that it was suitable for the use which he expected to make of it.

5. *Same; same; satisfactory completion of well; what dissatisfaction is a defense.*—Under such provision of said contract for payment on the "satisfactory completion" of the well and compliance with the agreed conditions, the contractors are entitled to payment upon the person for whom the well is board being satisfied that they had completed the well in substantial compliance with the contract, and the dissatisfaction of such person, which can be set up as a defense to an action by the contractors to recover the stipulated compensation, must not be caused by the quality of the water, nor by any considerations other than such as are connected with the sufficiency of the contractors' performance of their contractual obligations.

6. *Performance of services to the satisfaction of the party contracted with; what essential to compliance with contract.*—Where a contract provides for a satisfactory completion of certain work, not involving mere matters of taste or fancy, but according to certain stipulations and specifications, upon the other party being satisfied that the contractors have completed the work in substantial compliance with the stipulations and specifications, the contract is fully performed on the part of the contractors, although the result of the work may not be satisfactory to the other party; and if there exists no reason for dissatisfaction as to the fact of completion of the work, the other party is bound to be satisfied; and the contractors are entitled to recover under the contract.

7. *Plea of dissatisfaction; necessary allegations.*—In an action for the breach of a contract, a plea of dissatisfaction with work agreed in said contract to be satisfactorily completed, must allege the facts from which the dissatisfaction arises; and the mere allegations of dissatisfaction on the part of the defendant, without the averment of such facts, are insufficient.

[Electric Lighting Co. of Mobile v. Elder Bros.]

8.  *Plea answering whole complaint; when insufficient.*—Where a complaint in an action contains several counts, a plea to the whole complaint, and which presents no answer to one of the counts, is defective.

9.  *Action on a contract for the boring of a well; when acceptance of the well not necessary for payment; insufficiency of plea.*—Where a contract for the boring of a well provides that thirty days after the "satisfactory completion" of the well, the party for whom it was bored would pay for it, partly in cash and partly by notes due at certain periods "after the satisfactory termination and acceptance of the work," the acceptance of the work is not a condition precedent to payment—the acceptance according to the terms of the contract simply fixing the dates when the notes are made payable; and in an action by the contractors for the breach of said contract, a plea which avers that there never has been any "satisfactory termination and acceptance of said work," as provided by the contract, and that the defendant has never accepted the well, presents no legal defense and is demurrable.

10.  *Same; evidence as to whether well had been completed relevant.* In such an action, where the issue was whether the work had been satisfactorily completed, as contracted for, a question to one of the witnesses for the defendant as to whether the well had been completed to the satisfaction of the defendant, calls for relevant evidence, if intended as merely preliminary to further examination for the purpose of eliciting legal evidence as to the good faith and cause of defendant's dissatisfaction.

11.  *Same; charge to the jury.*—In an action upon a contract for the boring of a well, which provides that the payment for the work shall be made after the satisfactory completion of the well and the compliance with the conditions of the contract, charges which predicate plaintiff's right to recover solely upon the fact of the completion of the well in compliance with the contract, but ignoring the provisions of the contract which make the payment contingent upon the satisfactory completion of the well, are erroneous and should not be given.

Appeal from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This was an action brought by the appellees against the appellant. In the first count of the complaint the plaintiff claimed of the defendant the sum of $2,500 damages, for the breach of the following contract: "Know all men by these presents, that Messrs. Elder Brothers of New Orleans, La., hereafter mentioned as party of the first part, and the Electric Lighting Company of Mobile, a corporation doing business in this city,

and hereafter known as party of the second part, have made and entered into the following agreement, to-wit:

"First. The party of the first part will sink, entirely of its own expense and risk, at the power house of the party of the second part, an artesian well of six inches diameter, which will have a continuous flow at surface of not less than two hundred and fifty gallons of water per minute, and to have a pumping capacity of not less than seven hundred gallons of water per minute.

"Second. All the materials used in the construction of said well and the workmanship thereof is to be first-class, and all material and labor is to be at the expense of the party of the first part.

"Third. The water flowing from said well is to be deep strata water, and no strainer will be placed to obtain flow from intermediate or intervening strata, as water from that source is likely to be of such quality as is not adapted to the use of the party of the second part.

"Fourth. The party of the second part in consideration of the above premises, thirty days after satisfactory completion of the well aforesaid mentioned, and the compliance with the conditions promised by the party of the first part, will pay to the said party of the first part the sum of eighteen hundred and seventy-five dollars in the following manner: ($500) Five hundred dollars cash. ($1,375) Thirteen hundred and seventy-five dollars in two notes, each for half of said amount, payable, one three months and the other six months from the said thirty days after the satisfactory termination and acceptance of the work, both notes bearing interest at six per cent. per annum.

"Fifth. The party of the second part will furnish, free, the steam and water required in the work by the party of the first part, who will place at its expense whatever pipes may be necessary for said supply.

"Sixth. It is the spirit of this agreement that the party of the first part undertakes the work herein proposed at its own risk and responsibility, and that failing in the supply of water to the quantity herein stipulated and on the conditions above mentioned, it is to receive no pay from party of the second part."

The complaint then continues as follows: "And plaintiff's say that although they have complied with all

the provisions of said agreement on their part to be performed, the defendant has failed to comply with the following provisions, thereof, to-wit: 'The party of the second part in consideration of the above premises, thirty days after satisfactory completion of the well aforesaid mentioned, and compliance with the conditions promised by the party of the first part, will pay to the party of the first part the sum of eighteen hundred and seventy-five dollars in the following manner: ($500) five hundred dollars cash; ($1.375) thirteen hundred and seventy-five dollars in two notes, each for half of said amount, payable one three months and the other six months from the said thirty days after the satisfactory termination and acceptance of the work, both notes bearing interest at six per cent. per annum.' And plaintiffs aver that said work was completed on, to-wit, the sixteenth day of January, 1894, according to all the provisions contained in said agreement to be performed by plaintiffs, and thirty days thereafter plaintiffs demanded of said defendant the payment of said sum of five hundred dollars in cash, and said notes as provided by said agreement, but said defendant refused and still refuses to comply with its said agreement and pay plaintiffs said sum of five hundred dollars, and give to plaintiff said two notes, as by said agreement it agreed to do, wherefore plaintiffs sue." The other counts of the complaint were the general counts for work and labor done, &c.

The defendant filed in all 17 pleas. The 1st, 3d, 4th, 5th, 16th and 17th set up substantially the same defense, which was that the water furnished by the artesian well, which was bored by the plaintiffs, was not suitable for the use for which the plaintiff intended it. The 2d, 12th, 13th, 14th and 15th set up the defense, that there has never been any satisfactory termination and acceptance of said work, and that said well was not satisfactory to said defendant, and has never been accepted by the defendant, of which the plaintiff had notice.

To the first of these sets of pleas, the plaintiffs demurred upon the ground that the contract set forth in the first count of the complaint does not contain any undertaking or agreement on the part of the plaintiffs to guarantee the quality of the water supplied by the artesian well, or that it should have been suitable for use in the boilers of the defendant, and that said pleas are

no answer to the complaint.  To the second set of pleas, the plaintiffs demurred upon the ground that said pleas fail to allege what the defect in the work was, or in what respect or particular the work was not satisfactory to the defendant.  The demurrers to each of these pleas were sustained, and to this ruling the defendant duly excepted. Issue was joined upon the pleas of the general issue, and the eleventh special plea, which was as follows:  "And for further plea in this behalf, in answer to each of the common counts, leave of the court being first had and obtained, defendant says that it erected an electric plant in the city of Mobile for the purpose of furnishing the public and private electric lighting, and also for use in generating steam for said electric lighting and power purposes, and it was necessary for defendant to have a large quantity of water for use in said boilers for generating steam, and said plaintiffs, who are engaged in the occupation of sinking artesian wells, undertook and agreed by means of an artesian well placed on the premises where said plant is located, to furnish water adapted for use in said boilers in generating steam, for which defendant agreed to pay them in thirty days after the satisfactory termination and acceptance of said work, the sum of eighteen hundred and seventy-five dollars, five hundred dollars cash, and thirteen hundred and seventy-five dollars in two notes, each for half of said sum, payable in three and six months, respectively, the same being the foundation of said suit; and the defendant avers that the water furnished by plaintiffs from said well was not adapted for use in said boilers, in this, that it eats and corrodes and destroys the iron of which said boilers are constructed, and is mixed with a quantity of sand, and is a combination of sand and water, and is possessed of mineral properties, and quickly forms hard incrustations on the sides and bottom of the boilers, which weakens them and renders them liable to explosion and dangerous, and is not adapted for use in defendant's boilers, and therefore by the terms of said undertaking and agreement, plaintiffs were to receive no pay therefor."

Elder Brothers, the plaintiffs, were artesian well contractors and had been engaged in such business for about six years.  They bored an artesian well for the defendant under a contract, a copy of which is set out in the

complaint, and which contract was offered in evidence. Plaintiffs' testimony showed that the diameter of the well so bored for the defendant was six inches; that the well was bored at the power house of the defendant, and the materials and workmanship were first-class in every respect; that the well had a capacity of 315 gallons about four feet above the surface, and the pumping capacity was estimated to be 719 gallons per minute; that the water came from what is known as deep strata water, and there was no strainer put in to intercept any intervening water between the bottom and the top of the well. The well was finished a little before the 15th of January, 1894. The testimony of the plaintiffs tended to show that there was no sand in the water, the family of one of the witnesses drank the water for sometime and found no sand in it. The testimony for the defendant tended to show that there was sand in the water; that when the well was opened to its full capacity it would throw out a cart-load of sand within an hour; that on the morning of the trial a sack was held over one of the outlet pipes and within three minutes three quarts of sand were caught in the sack. The negotiations for boring the well were made between plaintiffs and Mr. S. S. Rubira, vice-president and general manager of the defendant company.

Upon the examination of said S. S. Rubira, he was asked the following question: "Has the Electric Lighting Company of Mobile ever been satisfied with, or has the artesian well ever been completed to the satisfaction of the Electric Lighting Company of Mobile?" Plaintiffs objected to this question, on the ground that it called for incompetent, irrelevant and immaterial evidence. The court sustained the objection, and to this ruling the defendant duly excepted.

There was evidence offered by the defendant to the effect that the result of the use in the defendants' boilers of the water from the artesian well bored by the plaintiffs was very injurious to the boilers, and, therefore, such water could not be used therein; but upon the objection of the plaintiffs to this evidence, the court refused to allow it to be introduced, and to this ruling the defendant duly excepted.

At the request of the plaintiffs, the court gave to the jury the following written charges: (1.) "If the jury

believe from the evidence that the contract or agreement set out in the first count of the complaint in this cause is the contract and agreement made by and between Elder Brothers and said Electric Lighting Company of Mobile, with regard to the boring or sinking of said artesian well, and that said Elder Brothers have done and performed all that they agreed to do and perform by the terms of said contract or agreement, then the jury must find for the plaintiffs under the first count of said complaint." (2.) "If the jury believe from the evidence that the contract or agreement set out in the first count of the complaint in this cause is the contract or agreement made by and between Elder Brothers and said Electric Lighting Company of Mobile, with regard to the boring or sinking of said artesian well, and that said Elder Brothers have bored or sunk an artesian well for the said Electric Lighting Company of Mobile at its power house, six inches in diameter, with a flow of water at surface of not less than two hundred and fifty gallons per minute, and with a pumping capacity of not less than seven hundred gallons per minute, and that all material used in the construction or sinking of said well was first-class, and all the workmanship in performing said work was first-class, and that the water reached by said well and flowing therefrom was deep strata water, and that no strainer was placed so as to obtain water from any intermediate strata, then the jury must find for the plaintiffs under the first count of said complaint." The defendant separately excepted to the court giving each of these charges, and also separately excepted to the court's refusal to give each of the following written charges requested by it:  (1.) "If the jury believe from the evidence that the said artesian well has not been completed to the satisfaction of the defendant, because the water flowing from said well—if it be a fact—is not suitable for use in the boilers of the defendant, then they must find for the defendant." (2.) "If the jury believe from the evidence that said well has not been completed to the satisfaction of the defendant, then they must find for the defendant." (3.) "If the jury believe from the evidence that said artesian well has never been accepted by the defendant, then they must find for the defendant."

There were verdict and judgment for the plaintiffs,

assessing their damages at $1,746.12. The defendant appeals and assigns as error .the several rulings of the trial court to which exceptions were reserved.

BESTOR & GRAY, for appellants.—1. In the construction of contracts, the intention and meaning of the parties must be ascertained from the writing, the nature of the transaction, and the surrounding circumstances. Every word and clause must be taken into consideration, and if possible have some effect given to it.—*Kyle v. Bellenger*, 79 Ala. 516 ; *McPherson v. Harris*, 59 Ala. 620 ; *Mason v. Alabama Iron Co.*, 73 Ala. 274.

2. Under the provisions of the contract in this case, the plaintiff undertook to sink a well at their own risk and responsibility, and contracted that if they failed to complete it to the defendant's satisfaction, they were to receive no pay. Any other construction put upon the contract would take away from the terms thereof the meaning usually given to such words. Inasmuch as the contract provides that the contract price is payable thirty days after the satisfactory completion of the well, there can be no recovery in this case until after such satisfactory completion. Where, by the terms of the contract, certain things are to be done which shall be satisfactory, unless such work is satisfactory, neither the contract price nor reasonable remuneration therefor can be recovered.—*Buford v. Ward*, 108 Ala. 311; *Singerly v. Thayer*, 2 Atl. Rep. 230 ; *McCarren v. McNulty*, 7 Gray 139 ; *Duplex Safety Boiler Co. v. Garden*, 54 Amer. Rep. 709.

McCARRON & LEWIS, *contra.*—1. When the language of a contract is such that no doubt or uncertainty exists as to the meaning of the terms used, parol evidence is not admissible to show that a different meaning was intended. And if the language is plain and unequivocal, there is no room for construction ; and even though a party may have misapprehended it, or it may not express his real intent, still it must be carried into effect according to its plain meaning.—1 Wait's Ac. & Def., 118, § 5. Every agreement or contract ought to receive a reasonable construction.—1 Wait's Ac. & Def., 119, § 7. A contract should be construed . as a whole, and

not by taking disjointed parts of it.—1 Wait's Ac. &
Def., 132, § 12.

2.   A party is not bound to perform an act which is
not within the stipulations of the contract, merely be-
cause the other party expected and understood that he
would perform it, and he knew that fact.—*Johnson v.
Sellers*, 33 Ala. 265.   A contract which the parties in-
tended to make, but did not make, can not be set up in
place of one which they did make, but did not intend to
make.—*Sanford v. Howard*, 29 Ala. 684.   The parties to
a contract are bound by the terms which they have vol-
untarily employed.—Bishop on Contracts, § 381.   In-
terpretation will lean to the construction which will make
the contract reasonable and just.—Bishop on Contracts,
§ 400.

3.   The intentions of the parties to a written contract
must be ascertained from the terms employed in the
contract, and the parties cannot be allowed to testify as
to their understanding and intention.—*Davis v. Robert*,
89 Ala. 402 ; *Kyle v. Bellenger*, 79 Ala. 516 ; *Cordova Coal
Co. v. Long*, 91 Ala. 538 ; *Jones & Co. v. Brewer*, 79 Ala.
545 ; *Van Eps v. Schenectady*, 7 Amer. Dec. 330 ; *Aiken v.
Sanford*, 5 Mass. 494 ; *Hoffman v. Aetna Fire Ins. Co.*,
88 Amer. Dec. 337 ; *Abbott v. Gatch*, 71 Amer. Dec. 635 ;
*Chapman v. Glassell*, 13 Ala. 50, 48 Amer. Dec. 41.

BRICKELL, C. J.—This was an action by appellees
against the appellant to recover for the breach of a con-
tract to pay the stipulated price for the boring of an
artesian well.   The correctness of the rulings of the trial
court will depend largely upon the construction of the
contract, which was in writing and is set out *in haec
verba* in the first count of the complaint.   The first
count assigns as the breach the failure of the defendant
to comply with the provisions of the fourth paragraph
of the agreement.   There was no objection made to the
complaint.   The special count declaring on the contract
is followed by five common counts, claiming for work
and labor done and materials furnished, &c.

The defense set up by many special pleas, the sustain-
ing of demurrers to which constitutes the principal
assignments of error, was that there had never been any
satisfactory completion of the said well, or that said well
as completed was not satisfactory to defendant, because

the latter, being the owner of and operating an electric lighting plant, and desiring a supply of water for use in its boilers for the purpose of generating steam, entered into said contract for the purpose of securing said water, which facts the plaintiffs well knew, and that the water furnished by said well was wholly unfit for use in said boilers. This defense is based upon the theory that, inasmuch as the plaintiffs knew the purpose for which the water was wanted, and, by the terms of the contract, the work was undertaken at their own risk and expense, and the payment of the compensation was made contingent upon its satisfactory completion, they, therefore, assumed the risk of procuring water suitable for use in defendant's boilers, and that, failing in this, there was no "satisfactory completion" of the well; and consequently no such performance by plaintiffs as entitled them to demand the stipulated compensation. On the other hand, it is contended on behalf of the plaintiffs that, having in all respects complied with the provisions of the first three paragraphs of the contract by boring a well at the designated place, and of the stipulated size and capacity, and procuring thereby deep strata water in the quantity agreed upon, without the use of any strainer to obtain a flow from intermediate strata, using in the work only first-class material and workmanship, supplied at their own expense, they are entitled to demand payment.

We cannot yield full assent to either proposition. In the construction of all contracts the object is to ascertain and, if possible, effectuate the intention of the parties, so that performance may be enforced according to the sense in which they mutually understood it at the time it was made; and to ascertain the intention it is necessary not only to examine the instrument itself, but also to consider the situation of the parties, the subject-matter, and the object it is intended to accomplish; and every word and clause must be taken into consideration, and if possible, given some effect.—1 Brick. Dig. 386, § 161; *Mason v. Alabama Iron Co.*, 73 Ala. 274. But, except in cases where mutual mistake or fraud is shown, a meaning cannot be forced into a contract in opposition to its text and repugnant to its terms. It is a rule of general application that where parties have entered into written engagements with express stipulations, these

cannot be changed by implication. The presumption is, that, having expressed some, they have expressed all the conditions by which they intend to be bound. *Blackman v. Dowling*, 63 Ala. 306. "Construction is the building up with given elements, not the forcing of extraneous matter into the text." Conceding that plaintiffs knew the purpose for which the water they had contracted to procure was wanted, and even knew that water of the quality which the well subsequently furnished would not be suitable for that purpose, the text of the contract, construed as a whole, precludes the construction that the parties intended that plaintiffs should assume the risk of procuring water of a suitable quality, and that payment should be contingent on their procuring such water; or that the defendant, after the whole work had been completed in substantial compliance with the requirements of the contract, should be able to avoid liability by basing its dissatisfaction, not on the quantity, but the quality of the water.

It may reasonably be assumed, in construing the contract, that both parties were ignorant of the quality of deep strata water that could be reached by the well. But both knew, or had reason to believe, that water from any intermediate strata would be unsuitable. And it was this ignorance as to the one and knowledge as to the other that probably led to the insertion in the contract of the third paragraph, the only one which makes any reference to the quality of the water, which reads: "The water flowing from said well is to be deep strata water, and no strainer will be placed to obtain a flow from intermediate or intervening strata, *as water flowing from that source is likely to be of such quality as is not adapted to the use of the party of the second part.*" The parties having in this paragraph provided that the water should be from deep strata, without any reference to its quality, and declared that water from any intermediate strata would not be suitable, we cannot conclude otherwise than that, either the defendant believed that the deep strata water would be suitable, or, being in ignorance as to its quality, it was the intention of the parties that he, and not the plaintiffs, should assume all risk as to its suitability. We are confirmed in this conclusion by the sixth and last paragraph of the contract, which may be considered, to some extent at least, as a construction of

the contract by the parties themselves, and is, therefore, entitled to great weight in ascertaining their intention in this respect. It reads : ''It is the spirit of this agreement that the party of the first part undertakes the work herein proposed at its own risk and responsibility, *and that failing in the supply of water to the quantity herein stipulated, and on the conditions above mentioned, it is to receive no pay from party of the second part.*'' We construe the phrase ''on the conditions above mentioned'' to refer to the words ''supply of water,'' and not to anything in the fourth paragraph, as counsel for appellant insists, and the whole paragraph to mean, that if the well fails to supply water on the conditions above mentioned (that is, deep strata water, as provided in the third para- graph), and the quantity stipulated (that is, 250 gallons at the surface and 700 gallons under the pump, as pro- vided in the first paragraph), then plaintiffs are to re- ceive no pay for their work. The clear expression in this paragraph of the contingencies upon the happening of which plaintiffs are to receive no compensation, pre- cludes the construction that the parties intended that no compensation was to be received if the water supplied by the well should be of a quality unfit for use in defend- ant's boilers. To adopt this construction and ingraft upon the contract such a condition, would be to imply a condition which is repugnant to its terms, and was not in the minds of the parties when they executed it. The presumption is that, having expressed some, they have expressed all the conditions by which they intended to be bound.

On the other hand, it is not to be supposed that the parties inserted any important word or clause in the contract without intending that some effect should be given to it. It is the object of construction to ascertain for what purpose each clause and word was used, and to effectuate that purpose if it can be done without giving to it an effect repugnant to the other terms of the con- tract which clearly show the intention of the parties. The fourth paragraph provides that the defendant ''thirty days after the *satisfactory completion of the well aforesaid mentioned, and compliance with the conditions promised by the party of the first part, will pay,*'' &c. The word ''satisfactory'' qualifies the phrase ''and compli- ance with the conditions promised,'' as well as the

phrase, "completion of the well." What effect shall be given to this word and to these phrases thus qualified? If on the one hand we interpret them in such manner as to make the payment contingent on the defendant's being satisfied, not only that the well has been completed in substantial compliance with the promises of the plaintiff, but also, that the water supplied by the well is suitable for use in its boilers, we give to them a construction that is repugnant to the other terms of the contract, which, as we have seen, preclude such construction. If, on the other hand, we interpret them to mean that payment shall be contingent only on plaintiffs' compliance with the promises made in the first, second and third paragraphs, then we ignore entirely the word "satisfactory," give it no effect whatever, since, the promise as to payment being clearly dependent, the law, without any express provision therefor in the contract, would require complete performance by plaintiffs before compelling payment. The defendant reserved the right to postpone payment for "thirty days after the satisfactory completion of the well." This precaution was evidently taken in order that it might satisfy itself not only that the workmanship and materials were first class, and that no strainer had been used to obtain a flow from intermediate strata, but also that the flow of water was "continuous," as the first paragraph requires, instead of merely intermittent and temporary. While it might be sufficient for the first hour or the first day, it might cease entirely, or be greatly diminished, the next, and therefore be unsatisfactory. Compliance with the provisions as to deep strata water, the use of strainer, the size of the well and the workmanship and materials, might be tested at once, but time was required to test the flow of water and produce satisfaction in this respect. The construction, therefore, which is most consistent with the other terms of the contract and most in accord with the sense in which both parties mutually understood it when made, is that payment of the stipulated compensation was to be contingent on the defendant's being satisfied that the construction of the well at the designated place and of the stipulated size had been completed, that the workmanship and materials used were first class, that the water reached by the well was deep strata water, having a continuous flow at the sur-

face and under the pump of the quantity specified, no strainer being used to obtain any part of the flow from intermediate strata.

Such being the contract of the parties, what were their respective rights and liabilities growing out of it? There is no reason of public policy which prevents parties to a contract for the performance of work from agreeing that the decision of one or the other, or of a third person, as to the sufficiency of the performance shall be conclusive. Having voluntarily assumed the obligations and risks of a contract, their legal rights and liabilities are to be determined solely according to its provisions. Where the decision is left to a third person, the authorities almost universally hold that his action, in the absence of fraud, or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment, is conclusive upon the parties.—*Martinsburg & P. R. R. Co. v. March*, 114 U. S. 549; *Wangler v. Swift*, 90 N. Y. 38; *Tetz v. Butterfield*, 54 Wis. 246; *Stose v. Heissler*, 120 Ill. 433; *Boettler v. Tendick*, 5 L. R. A. 270, notes. So, where by the terms of a contract to do a piece of work or perform services, the excellence of which is not a mere matter of taste or fancy, or to furnish a piece of machinery or other article, the suitableness of which involves a question of mechanical fitness to do certain work or accomplish a certain purpose, the one party warrants the work or article to be satisfactory to the other, the weight of authority is, though the cases are not entirely harmonious, that there can be no recovery when the employer or purchaser is in good faith dissatisfied. And this is true where there is no express warranty that the work or article shall be satisfactory, but a provision making the payment contingent upon its being satisfactory.—*Singerly v. Thayer*, 108 Pa. St. 291; *Howard v. Smedley*, 140 Pa. St. 81; *McCarren v. McNulty*, 73 Mass. 139; *Daggett v. Johnson*, 49 Vt. 345; *Johnson v. Roberts*, 58 Vt. 599; *Duplex Boiler Co. v. Garden*, 101 N. Y. 387; s. c. 54 Am. Rep. 709, notes; *Doll v. Noble*, 116 N. Y. 230; *Campbell Printing Press Co. v. Thorp*, 36 Fed. Rep. 414; *Church v. Shanklin*, 17 L. R. A. 207, notes; *Gray v. Cent. R. R. Co.*, 11 Hun. 70; *Silsby Mfg. Co. v. Chico*, 24 Fed. Rep. 893; *Exhaust Ventilator Co. v. Chicago, M. & St. P. R. Co.*, 66 Wis. 218. But much depends on the subject-matter and context of the contract. The

broad statement quoted in *Buford v. Ward*, 108 Ala. 311, that "where, by the terms of the agreement an article is to be furnished which shall be satisfactory to the defendant, if he refuses, though from mere caprice, to be satisfied therewith, neither the contract price nor any reasonable remuneration can be recovered," has no application to the case under consideration. That doctrine is confined to contracts for the sale of an article or the doing of a piece of work, the excellence of which is a mere matter of taste or fancy, such, for instance, as a portrait, bust, or dramatic play. In a case like the present one, the party cannot capriciously refuse to accept the work. He must be in good faith dissatisfied. He cannot avoid liability by merely alleging that he is dissatisfied; he is bound to be satisfied when he has no reason to be dissatisfied; he must fairly and honestly test the work, exercising such judgment and capacity as he has. The dissatisfaction must not be capricious, nor mercenary, nor result from a design to be dissatisfied; it must exist as a fact; it must be actual, not feigned; real, not merely a pretext to escape liability.—*Daggett v. Johnson*, 49 Vt. 345; *Silsby Mfg. Co. v. Chico*, 24 Fed. Rep. 893; *Singerly v. Thayer*, 108 Pa. St. 291; *Campbell Printing Press Co. v. Thorp*, 36 Fed. Rep. 414; *Exhaust Ventilator Co. v. Chicago, M. & St. P. R. Co.*, 66 Wis. 218. There are a few cases which seem to hold that "that which the law will say a contracting party ought in reason to be satisfied with, the law will say he is satisfied with;" and they submit to judicial triers the question, not whether he is satisfied, but whether as a reasonable man he ought to be satisfied. But in these cases it will be found that there is some peculiarity in the subject-matter of the contract, as in *Duplex Boiler Co. v. Garden, supra,* where the contract was to make certain repairs, which, being made, though not entirely satisfactory, were used and enjoyed by the employer; or the case of *Pope Iron & Metal Co. v. Best,* 14 Mo. App. 503, where also the fruits of the labor of the one party were retained and enjoyed by the other. Under such circumstances we do not doubt there could be a recovery for work and labor done and materials furnished, in a proper action, as we hold in *Davis v. Badders*, 95 Ala. 361; where the defense was that the plaintiff, seeking to recover under a building contract, had not received the architect's certificate.

Applied to the case under consideration, these principles lead to the conclusion, that if the defendant was in fact satisfied that plaintiffs had completed the well in substantial compliance with the terms of the contract as it has been above construed, then there has been such performance on their part as will entitle them to demand performance on the part of the defendant. It should be observed that it is not the well with which, by the terms of the contract, defendant is to be satisfied, but the completion of the well by plaintiffs in substantial compliance with their promises. The dissatisfaction, which can be set up as a defense to the action, must not be caused, in whole or in part, by the quality of the water, nor by any considerations other than such as are connected with the sufficiency of plaintiff's performance of their contractual obligations. If defendant had no reason to be dissatisfied with such performance, he was bound to be satisfied. This only means, however, that, the fact of dissatisfaction being for the jury to determine, it may reasonably be inferred that if there was no reason for its being dissatisfied, it was in fact satisfied.

From what has been said it follows that the special pleas, to which demurrers were sustained, do not set up any legal defense to the action. The first series, numbered from one to five, go to the whole complaint, composed of six counts, and are no answer to the first count. All, except the second, set up the defense that the completion of the well was not satisfactory because the water was unsuitable for use in defendant's boilers. With respect to the second, which avers that there never has been any "satisfactory termination and acceptance of said work" as provided in the contract, and that the well was not satisfactory to defendant and had never been accepted by it, it should be observed that the contract does not make the payment contingent upon the acceptance of the work; but, on the contrary, both the cash payment is to be made and the notes given "thirty days after satisfactory completion of the well." The acceptance, according to the terms of the contract, simply fixes the date when the notes are to be made payable, namely, three and six months "from the said thirty days after the satisfactory termination and acceptance of the work." It should also be observed in considering this plea and others which simply allege

[Electric Lighting Co. of Mobile v. Elder Bros.]

dissatisfaction, that a mere allegation of dissatisfaction is insufficient, since the dissatisfaction must not be capricious or arbitrary, but honest and founded in good faith, and confined, with respect to the causes which produce it, to matters connected with the performance by plaintiff of his obligations. The pleas should state the facts which cause the dissatisfaction. The sustaining of the demurrers to the 6th, 7th, 8th, 9th and 10th pleas is not assigned as error. The 12th, 13th, 14th and 15th are subject to the same objections as the 2d. The 16th and 17th base the dissatisfaction on the quality of the water. There was no error committed in sustaining the demurrer to the pleas.

It is unnecessary to consider in detail the rulings of the trial court on the evidence. Some of the testimony offered was relevant on the issue presented by the eleventh plea, which went to the common counts only, but the record shows that the trial of the cause proceeded only on the special count declaring on the contract. Evidence as to the quality of the water and the effect of its use on defendant's boilers was inadmissible under the special count. The question propounded to the witness, Rubira, as to whether the well had been completed to the satisfaction of defendant, was relevant, if intended as merely preliminary to further examination for the purpose of eliciting legal evidence as to the good faith and causes of the dissatisfaction. The court may exclude legal evidence, at any stage of the trial, though objection was not made to its introduction.—*Edisto Phosphate Co. v. Stanford,* 112 Ala. 493 ; 1 Brick. Dig. 887, §§ 1190–97.

The court erred in giving charges numbered 1 and 2 at the request of plaintiffs, since they predicate plaintiffs' right to recover solely upon the fact of the completion of the well in compliance with their contract, and ignore the provision of the contract which makes the payment contingent upon the "satisfactory completion of the well". The charges requested by the defendant were properly refused.

Let the judgment be reversed, and the cause remanded.