·26 So.2d 427

**NORWOOD HOSPITAL, Inc., v. HOWTON.**
6 Div. 250.

Court of Appeals of Alabama.
May 14, 1946.

Rehearing Denied June 4, 1946.

Hugh A. Locke and Wade H. Morton, both of Birmingham, for appellant.

Wm. Conway, of Birmingham, for appellee.

CARR, Judge.

Under the terms of a written contract entered into between the Norwood Hospital, appellant here, and the DeBardeleben Coal Company, it was agreed, upon certain stated conditions, that the hospital would afford hospitalization to persons, and their families, who were employed by the coal company. Appellee and his family were entitled to the benefits of the written instrument.

The pertinent provisions of the contract, so far as this appeal relates, are:

"No employee or any member of his family shall be admitted to the hospital (other than in accident cases) except upon written request of the doctor regularly employed by the Corporation or the patient's family physician.

"Upon such written request of the attending physician a member or members of the 'STAFF' shall examine all applicants for hospitalization in order to determine whether or not hospitalization is necessary, or whether or not the disease or condition is such as is included or excluded from the hospital under the terms of this contract. In the event it should be excluded from the hospital under the terms of this contract or it is determined that no hospitalization is necessary, the 'STAFF' will advise the employee and/or his family and/or his attending physician the diagnosis and findings revealed by said examination in order that the employee and/or his family may be properly treated by his own physician."

At the time in question Dr. William J. Lovett was a regularly employed physician of the DeBardeleben Coal Company, and appellee's wife had been brought under his professional care. In the course of his treatment the doctor referred his patient to the appellant's hospital. The direction was in writing as follows:

"Patient:
"Name Mrs. Howard Howton  Age 30
"Address Sipsey, Ala.          Date. 6/1/44
"Norwood Clinic
"Bham.
"History:  Recurrent attacks pelvic infection & Ovaritis—Health not good but small part of time— Menses not normal—Norwood 2 years ago.
"Husband employee here & pays you 2.25 fee.
        "Yours truly
              "Wm. J. Lovett."

Upon arrival at the clinic of the hospital Mrs. Howton was given a physical examination by Dr. M. D. Anderson, one of the staff physicians, and Dr. C. N. Carraway in consultation. The latter was chairman of the board of directors of the institution.

The hospital chart, which indicated the findings of the examination, was:

"Irregular menstruation; right lower quadrant pain; passes only a few drops for last 2 months. Prescription: stilbestrol, milligrams, 5; three times a day."

Both Dr. Anderson and Dr. Carraway testified that in their opinion the lady did not need or require hospitalization. She was directed by them to follow the prescribed treatment and return in ten or fourteen days. The following letter was sent to Dr. Lovett:

                    "June 6, 1944
"Wm. J. Lovett, M. D.
  "Sipsey, Alabama
        "Re Mrs. Howard Howton
"Dear Doctor Lovett:
  "This patient was seen in the clinic complaining of irregular menstruation and

right lower quadrant pain for the past two months.

"Examination revealed no menstrual abnormalities and the patient will be given a trial test on stilbestrol as an attempt to regulate her menstrual cycle.

"Very truly yours.

"M. N. Anderson, M. D."

On the occasion of her second visit to the clinic, Mrs. Howton stated to Dr. Anderson that she was not feeling any better, had not shown any progress, and had been having chills and fever. Reflecting her condition upon the second examination, the hospital chart showed:

"No better; having chills and fever; pelvis reveals moderate tenderness in both annexae; no masses; cervix patent but firm, with some evidence of vaginal inflammation. Cystocele and rectocele are prominent. Smear taken."

In explanation of a part of the chart reading, Dr. Anderson testified:

"A. Well, the bladder has a muscular wall, the same as the rectum, and, due to pressure within the abdomen and from the rectum, and as a rule due to childbirth, these two organs prolapse; so to speak, collapse. It is merely a weakening of the muscles of the pelvic floor, and they bulge down into the vagina. That is a very common condition.

"Q. What did you prescribe that time? A. I think I gave her sulfa, and I also told her that she would have to have that repaired eventually.

"Q. That she would eventually have to have that repaired? A. That is right.

"Q. You mean that falling? A. That is right.

"Q. Is their anything acute about that— A. (Interposing) No, sir.

"Q. That calls for immediate operation? A. No, sir.

"Q. What is the best practice of physicians with reference to that trouble? A. It is usually done after the childbearing period."

Again Dr. Anderson entertained the view that Mrs. Howton's condition was such that hospitalization was not necessary, and again she was advised to follow the treatment and was also told if she did not show improvement to return to the hospital at a later date.

Appellee's wife did not return to appellant's clinic, but instead employed the professional services of Dr. Harold Langdon who was in no way connected with the DeBardeleben Coal Company.

Dr. Langdon testified that when he saw Mrs. Howton she was complaining of severe abdominal pains and intense nausea and in his professional judgment she should go to a hospital. He so advised her, and she was forthwith carried to the Birmingham Baptist Hospital. For the first week or ten days she did not respond satisfactorily to the treatment and persisted in having pain in her lower abdominal region and also suffered from nausea. The doctor, according to his testimony, suspected that the patient had a mild inflammation or infection of the uterus which could not be detected from her blood count. She was scheduled for a curettement of the uterus, and during the process of the curettement a hemorrhage developed which could not be checked by packing. It became necessary, in the opinion of the surgeon, to remove the uterus to assure safety to the life of the patient.

Mrs. Howton remained in the hospital all together about twenty days. At the trial of the instant case she testified in part: "I have been feeling fine. It has not hurt a bit after the operation."

We should not overlook to note the dates of the various occurrences in question. The first visit to the Norwood Hospital was on June 1, 1944; the second, June 19th following; and the admittance to the Baptist Hospital was on June 22, 1944. The trial in the lower court began on April 3, 1945.

Suit was brought by appellee for damages which in his complaint he claims he suffered because of a breach of the contract referred to above. According to his contention appellant refused to his wife the benefits of hospitalization, to which, under the terms of the agreement, he was justly entitled.

It is urged that the evidence does not sustain the necessary proof that there was

a demand for performance on the part of appellee or his wife or a refusal to perform on the part of the appellant.

Under the terms of the contract this is a condition precedent to a right of action for its breach. 17 C.J.S., Contracts, § 590, subsec. b(3), p. 1232; 12 Am.Jur., Sec. 296, p. 849; Ingram et al. v. Bussey, 133 Ala. 539, 31 So. 967.

We entertain the view, however, that under the evidence in this case it became a question for the jury to determine whether or not these essential requisites were established. The jury was privileged, and it was its duty, to consider all the facts and circumstances disclosed by the evidence in its effort to find whether or not there was a demand for performance and a refusal thereof. This inquiry would include a consideration of the conduct of the parties involved. It cannot be successfully contended that a formal demand or refusal was required. If it was made known to the hospital authorities that hospitalization was expected, and the course of action of the authorities was such that the jury could reasonably infer that hospitalization was denied, these essential conditions would have been met. 17 C.J.S., Contracts, § 479, p. 984; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co. et al., 127 La. 348, 53 So. 646; Ingram et al. v. Bussey, supra; Alabama Trunk & Luggage Co. v. Hauer, 214 Ala. 473, 108 So. 339.

In further support of our view we find in Mrs. Howton's testimony the following:

"Q. Did you ask to be admitted to the hospital at that time; that is, on the 19th of June? A. Yes, sir, I did."

The position is also taken in oral argument and brief of counsel that, since the contract in question provides by its terms that the hospital staff shall determine whether or not hospitalization is necessary or required, appellee is precluded from inquiring into the good faith of the decision so made and is compelled to accept this judgment as final and conclusive of the right to claim a breach of the contract to furnish hospitalization.

It is, of course, the duty of the courts to adhere to the expressed stipulations of a written agreement and not change by implication the manifest intention of the contracting parties. "The presumption is, that, having expressed some, they have expressed all the conditions by which they intend to be bound." Blackman v. Dowling, 63 Ala. 304.

This responsibility of the court must, however, yield to a reasonable construction of all contracts in an effort to secure and safeguard the real intention of the parties in the light of their mutual understandings and the objects and rights intended to be accomplished and protected. Electric Lighting Co. of Mobile v. Elder Bros., 115 Ala. 138, 21 So. 983.

We have been unable to find any authority in this State where the appellate courts have had occasion to construe a contract in exact verbiage as the instrument of instant inquiry. We have located cases where the contract involved was for the sale of land dependent upon title which meets the approval of the purchaser's attorney, and also cases where the contract obligated one of the contracting parties to furnish labor or material, payment therefor being based on the contingency that the recipient of the services or the purchaser of the goods be satisfied. McDennis v. Finch et al., 197 Ala. 76, 72 So. 352, 353, is within the former class. Quoting from the body of the opinion:

"So the controlling inquiry was and is, not whether Mrs. Pyron in fact had a good and sufficient title to the land described in the contract, but whether, in respect to her asserted title, the attorney's conclusion and assertion of dissatisfaction therewith was founded and entertained in good faith; was not capricious, nor the result of a design to be dissatisfied."

Electric Lighting Co. of Mobile v. Elder Bros., supra, is included in the latter group. In this case the court observed [115 Ala. 138, 21 So. 987]:

"So, where, by the terms of a contract to do a piece of work or perform services, the excellence of which is not a mere matter of taste or fancy, or to furnish a piece of machinery or other article the

suitableness of which involves a question of mechanical fitness to do certain work or accomplish a certain purpose, the one party warrants the work or article to be satisfactory to the other, the weight of authority is, though the cases are not entirely harmonious, that there can be no recovery when the employer or purchaser *is in good faith dissatisfied.* And this is true where there is no express warranty that the work or article shall be satisfactory, but a provision making the payment contingent upon its being satisfactory." (Emphasis ours.)

See also, Higgins Mfg. Co. v. Pearson, 146 Ala. 528, 40 So. 579; Utley et al. v. Stevens, 221 Ala. 666, 130 So. 405; Jones v. Lanier, 198 Ala. 363, 73 So. 535; Shelton v. Shelton, 238 Ala. 489, 192 So. 55.

In Utley et al. v. Stevens, just cited supra, Justice Foster for the Supreme Court says [221 Ala. 666, 130 So. 408]:

"An agreement between seller and purchaser that the goods sháll be 'satisfactory' to the purchaser has a well-defined legal significance and is not void for uncertainty. It means in respect to machinery that the purchaser, after a fair test, is satisfied with the 'mechanical utility or operative fitness for the purposes intended.' This must be an opinion based upon good faith, and for a better reason than a mere desire to avoid liability."

The written instrument presented for consideration in Manufacturers' Finance Acceptance Corp. v. Woods, 24 Ala.App. 202, 132 So. 608, 610, contained the stipulation: "Whenever you (referring to the mortgagee) shall deem the debt insecure * * * the full amount unpaid hereunder, including any note given, shall become due and payable forthwith."

■ Justice Bouldin, writing for the Supreme Court in granting certiorari, 222 Ala. 329, 132 So. 611, 613, approved the following statement in the dissenting opinion of Presiding Judge Bricken of this court:

"This contract is in this respect analogous to contracts where parties agree that a contract shall be performed to the satisfaction of the opposite party. It has been uniformly held under contracts of that character that, if no bona fide reason exists for dissatisfaction, then the law regards the contracting parties as satisfied." Manufacturers' Finance Acceptance Corp. v. Woods, 24 Ala.App. 202, 132 So. 608, 610.

See also, R. P. Harris & Co. v. Thomas, 17 Ala.App. 634, 88 So. 51; Roy v. Goings, 96 Ill. 361, 36 Am.Rep. 151.

In the case of Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681, 684, 27 A.L.R. 834, the controlling question turned upon the construction of a provision in a lease contract in which it was provided that the lessor was authorized to terminate the lease upon four months' notice to the lessee in case she desired to improve the premises. In the opinion we find:

"And, while the expression of such a desire in the appointed way may be prima facie evidence of its existence, yet it is the actual existence of the desire, and not its expression merely, which must furnish the basis and justification for the cancellation of the lease. * * * In all such cases the desire must exist and the decision must be made in good faith; that is, actually and without dissimulation."

We entertain the view that the contract under instant inquiry is not different in principle from the instruments involved in the cases we have reviewed and cited above. It appears clearly that on the basis of logic, reason and due recognition of appellee's rights, an occasion is presented here to apply the rule which guided the courts in the authorities supra. A contrary construction would afford opportunity for one contracting party to strike down at will benefits intended to be conferred by the written instrument. It is reasonable to assume that this was not the intention, but that the parties were dealing on the basis of justice and fairness.

■ It is true the word "determine" means to come to a decision; to decide; to resolve. Webster's New International Dictionary. Nevertheless, our considered conclusion is that the good faith of the decision is open to inquiry.

■ In relation to the question of good faith, vel non, it follows that, if the testimony is in conflict or if there is evidence

reasonably affording an inference that the hospital staff did not so act in failing to admit appellee's wife for hospitalization, a jury question is posed. Worthington & Co. v. Gwin, 119 Ala. 44, 24 So. 739, 43 L.R.A. 382; 6 R.C.L., Sec. 333, p. 952.

Dr. Langdon saw Mrs. Howton three days after her last visit to appellant's hospital. The doctor testified that the lady was complaining of severe abdominal pains and intense nausea, and that he prescribed hospitalization, which in his professional opinion was necessary for proper treatment and care. The direction of the doctor was carried out, and Mrs. Howton was admitted to the Baptist Hospital.

 Should we rely solely on the expert testimony, it appears that a jury question was presented. In any event, considering all the evidence as disclosed by the record and the reasonable inferences that may be drawn therefrom, we are forced to the conclusion that the lower court properly submitted this issue to the jury. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 So. 964.

With the exception of assignments of error 4 and 5, all others are grouped in brief of counsel with assignments 1 and 2, which we have considered above. We will pretermit a treatment of the other assignments so grouped. Ogburn v. Montague, 26 Ala.App. 166, 155 So. 633.

This brings us finally to a consideration of the propriety of the nisi prius court in overruling appellant's motion for a new trial, which is presented for review by assignments of error 4 and 5.

We have endeavored to set out in this opinion all the salient facts. The able, experienced trial judge overruled the motion for a new trial, thereby evidencing the opinion that the verdict of the jury should not be disturbed on the question of plaintiff's right to recover. The lower court reduced the amount of damages which the jury found to be due. About this, we are not concerned on this appeal.

We are not convinced, in adherence to the well recognized rule, that the primary court was in error in overruling the motion. We will not, therefore, disorder his judgment. Cobb v. Malone and Collins, 92 Ala. 630, 9 So. 738; Davis v. Clausen, 7 Ala.App. 381, 62 So. 267; Tennessee Coal, Iron & R. Co. v. Stevens, 115 Ala. 461, 22 So. 80.

The judgment of the court below is ordered affirmed.

Affirmed.