350 So.2d 1035 (1977)
HOMA-GOFF INTERIORS, INC., an Alabama Corporation, John Wayne Goff, Pal Shoemaker, and J. Henry Goff
v.
Geraldine W. COWDEN.
SC 2277.
Supreme Court of Alabama.
August 12, 1977.
Rehearing Denied November 4, 1977.
*1036 Jesse M. Williams, III, and James W. Garrett, Jr., Montgomery, for appellants.
W. Ernest Moss, William I. Hill, II, John M. Milling, Jr., for Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellee.
JONES, Justice.
This summary judgment case involves a counterclaim filed by the appellants, Homa-Goff Interiors, Inc., against Geraldine Cowden, the appellee, claiming interference with a contractual relationship and unlawful refusal, by Mrs. Cowden, to grant consent to a sublease agreement between Homa-Goff and certain named prospective subtenants.
In February of 1974, a lease was entered into by Mrs. Cowden and Homa-Goff, John Goff, Pal Shoemaker, Henry Goff, and Thomas Gallion for a ten-year period. The lease was negotiated by Ted Cason, Mrs. Cowden's son-in-law. The lease contained a clause which restricted the lessees' power to sublet subject to the landlord's written consent.
In October, Homa-Goff opened a furniture store on the leased premises. After several months in business, however, it became apparent to the appellants that, because of financial problems, they could not continue their operation. Therefore, they began seeking a subtenant. After some negotiation with the State of Alabama, the appellants, according to their counterclaim, reached a tentative agreement with the State to sublease the premises at a rental rate in excess of the rate paid by the lessees. Mrs. Cowden, exercising her option provided in the lease, refused to approve the State as a sublessee.
Homa-Goff also attempted to sublease the property to James Rudd, Jr. The appellants and Rudd, Jr., had several meetings and set up a meeting at the leased premises.
*1037 Upon arriving at the premises, John Goff discovered Ted Cason talking with Rudd's father. Appellants charged in their counterclaim that Cason informed Rudd, Sr., that John Goff was without authority to rent the building, but that he, Cason, on behalf of Mrs. Cowden, could lease the building to Rudd, immediately, at a lower rental rate.
Rudd, Jr., testified at deposition that he had no intention of subleasing. John Goff testified at deposition that Rudd, indeed, was interested in subleasing and had inquired about prices. In any event, the building was eventually leased to Rudd, by Cason, for the same amount of rent paid by Homa-Goff.
Mrs. Cowden filed suit against the appellants claiming breach of the terms and conditions of the lease, consisting of failure to pay the November, 1975, rent installment. After Homa-Goff counterclaimed, Mrs. Cowden filed a motion for summary judgment as to the counterclaim, which was granted by the trial Judge.
The trial Judge based his ruling upon two legal principles. First, the trial Judge ruled: "Alabama is one State that does not recognize in general a cause of action for interference with a contractual relationship." Secondly, the trial Judge ruled: "[t]he landlord's withholding of consent can be arbitrary and unreasonable." From the order based on these rulings, Homa-Goff appeals. We reverse.
The threshold question is whether Mrs. Cowden, pursuant to ¶ 15(a) of the lease, may arbitrarily and capriciously reject a subtenant proposed by the lessee. This question, apparently, has never been considered by this Court. If we hold that the trial Judge was correct in ruling in the affirmative on this issue, we need not deal with the allegations concerning interference with a contractual relationship. And this for the reason that, if Mrs. Cowden may arbitrarily reject proposed subtenants, Homa-Goff was powerless to enter into any contractual relationship with the State or Rudd, Jr., without Mrs. Cowden's approval.
It should be noted at the outset that, in the absence of a restrictive clause as set out in ¶ 15(a), the lessee generally has the right, without consent of the lessor, to assign his interest under the lease, or to sublet the premises, because the law looks with disfavor on restraints on alienation. 49 Am.Jur.2d, Landlord and Tenant, §§ 398, 481. ¶ 15(a) of the lease states:
"The Lessee shall not assign or sublease all or any part of the demised premises except by and with approval of the Lessor in writing. Should such approval be given, the assignment or sublease of said leased premises shall not release the Lessee of its obligation hereunder."
The general rule throughout the country has been that, when a lease contains an approval clause, the landlord may arbitrarily and capriciously reject proposed subtenants. See 49 Am.Jur.2d, Landlord and Tenant, § 423; 51C C.J.S. Landlord and Tenant § 36(1); 31 A.L.R.2d 821. This rule, however, has been under steady attack in several states in the past twenty years; and this for the reason that, in recent times, the necessity of reasonable alienation of commercial building space has become paramount in our ever-increasing urban society.
Ohio has expressly rejected the general rule. Shaker Building Co. v. Federal Lime and Stone Co., 28 Ohio Misc. 246, 277 N.E.2d 584 (1971). In Shaker, the lease provision permitted assignment and subletting only with the permission of the landlord. The Ohio Court, in ruling on whether the landlord could arbitrarily withhold consent, stated:
"(W)here provision is made in a lease permitting assignment of rights thereunder, limited only by the requirement of prior consent of the lessor, such consent may not be withheld unless the prospective assignee is unacceptable, using the same standards applied in the acceptance of the original lessee." 277 N.E.2d at 587.
The arbitrary and capricious rule has also been rejected in Illinois. Arrington v. Walter E. Heller International Corp., 30 Ill. App.3d 631, 333 N.E.2d 50 (1975). In Arrington, *1038 the situation was somewhat reversed in that the lessee had the right to refuse to consent to the occupation of the building by another lessee. The defendant leased the top fifteen floors from the plaintiff. The lease contained a provision which stated:
"Landlord covenants and agrees that it will not enter into any lease or other arrangement respecting the use of space on the ground floor, mezzanine and lower concourse of the building without the written consent of tenant, which consent shall not be unreasonably withheld."
The Appellate Court points out that, in Arrington, the tenant expressly provided that he would not unreasonably withhold consent. The Court adds, however, that this was a mere recital of the law of Illinois which is:
"Where the lease merely contains a provision  without more  granting a person, normally a landlord, the power to withhold consent, regardless of whether explicitly qualified to reasonable exercises of that power . . . the courts have held the person's refusal to consent to a person acceptable by reasonable commercial standards to be an unreasonable exercise and thus violative of the lease." 333 N.E.2d at 58. (Emphasis added.)
Guided by this rationale, we hold that, even where the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord's rejection should be judged under a test applying a reasonable commercial standard. This question, of course, becomes a question of fact to be determined by the jury. Therefore, we hold that the trial Judge erred in granting a summary judgment in favor of Mrs. Cowden regarding appellant's claim alleging Mrs. Cowden was arbitrary and capricious in rejecting the prospective subtenants. It is a jury question whether Mrs. Cowden acted reasonably, and there is sufficient conflict of material fact to mandate a reversal.
While our decision is not limited to the particular facts before us, we can perceive no set of circumstances which would more dramatically support the reasons behind this rule, and the moral need for it, than the facts of this case. The tenant sought and secured a potential subtenant. Before a sublease agreement was consummated, Mrs. Cowden exercised her "right" under the lease to disapprove the proffered subtenant. Thereafter, however, she proceeded immediately to lease the same premises to the same person previously rejected. To accept as a tenant the very party rejected as a subtenant is, at the very least, evidence of extreme bad faith, for, in this instance, the act of disapproval became the act of approval.
Because we have ruled that a landlord may not arbitrarily and capriciously reject a subtenant when the landlord reserves the right of approval of sublessees, we must now address the issue whether Alabama law recognizes a cause of action for tortious interference with a contractual relation. The trial Judge is correct in stating that generally Alabama does not recognize a cause of action for the tortious interference with a contract. There are, however, two important exceptions to this rule which are set forth in Erswell v. Ford, 208 Ala. 101, 94 So. 67 (1922): The first involves employer-employee relationships; and the second occurs when a party to a lease has been induced, by fraud or coercion, to breach his contract. See McCluskey v. Steele, 18 Ala.App. 31, 88 So. 367 (1920). Appellants specifically allege, "Ted Cason. . . intentionally, fraudulently, maliciously and wrongfully made statements to James Rudd. . . ." Thus, under the exceptions enunciated in Erswell, the appellants have properly set forth a cause of action, and the trial Judge erred in granting summary judgment.[1]
REVERSED AND REMANDED.
*1039 FAULKNER, J., concurs.
MADDOX, SHORES, EMBRY and BEATTY, JJ., concur specially.
TORBERT, C. J., and BLOODWORTH and ALMON, JJ., dissent.
BEATTY, Justice (concurring specially).
I concur with the majority opinion of Justice Jones in which he maintains that the lessor may not arbitrarily reject a sublessee chosen by the lessee. In my opinion, clauses which restrict subleasing should be interpreted to call for the application of reasonable commercial standards unless the parties themselves expressly agree that the lessor's decision, for whatever reason, is binding. This is so because it is probable that when contracting the parties expect each other to act reasonably.
I express no opinion upon the other aspects of the majority opinion, particularly regarding the reference to the effect of the moral point of view upon the decision in this case. The prospect of this Court's (or any court) deciding individual cases upon the Court's own moral assessments is something which might be useful in frightening little children into proper behavior, but its utility in decision-making deserves much study.
MADDOX, SHORES and EMBRY, JJ., concur.
BLOODWORTH, Justice (dissenting).
I respectfully dissent.
Since 1853, this Court has upheld lease provisions which provide that there shall be no subletting without the express consent of the lessor. See: Nave v. Berry, 22 Ala. 382 (1853); Crommelin v. Thiess & Co., 31 Ala. 412 (1858); Maddox v. Wescott, et al., 156 Ala. 292, 47 So. 170 (1908); City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 108 So. 257 (1926); Faucett v. Provident Mut. Life Ins. Co. of Philadelphia, 244 Ala. 308, 13 So.2d 182 (1943).
To overturn a century and a quarter of existing real estate law without giving contracting parties "fair notice" is my principal complaint with the majority's opinion. At the very least, I think the majority ought to make the rule they have adopted "prospective."
There must be literally tens of thousands of existing leases with similar "consent" provisions as to subletting as those in this case. Lawyers and judges should have a right to rely on existing well-settled property law interpretations by our courts. See my special concurrence in Nunn v. Keith, 289 Ala. 518, 524, 268 So.2d 792 (1972).
As Mr. Justice Almon points out in his dissent, in quoting from Mr. Justice Bouldin's opinion in Faucett, supra, parties have a right to contract as they see fit so long as their contracts are not violative of the law, and I would add, or against public policy. Here, the parties made their contract; they ought to be bound by it. I would add that I concur in the other views expressed in Justice Almon's dissent.
TORBERT, C. J., and ALMON, J., concur.
ALMON, Justice (dissenting):
I would adhere to the view adopted by a majority of jurisdictions in this country. Citizens should have the right to contract. Art. 1, Sec. 22, Constitution of Alabama, 1901.
In my judgment, the court has rewritten this contract so as to rid it of its alleged moral harshness. There are many valid reasons why a lessor would insist that a lease-contract contain a provision to prevent subletting without the consent of the lessor. Why should a lessor be obligated to accept a sub-tenant chosen by a defaulting original tenant on the basis of "commercial standards," (whatever they may be) when the lessor's contract plainly gives him a contrary right?
Moreover, the leasing of real property for a term of years conveys an estate. The majority has enlarged that estate.
"Under the plenary power to make contracts, not violative of law, the lessor and *1040 lessee may stipulate there shall be no subletting of the property nor any portion of same without advance consent of the lessor evidenced by written endorsement on the lease. This is said to be restrictive of the estate which would otherwise pass to the lessee. Annotation 117 Am.St.Rep. 92 et seq.; 32 Am.Jur. 333; Maddox v. Westcott, 156 Ala. 492, 47 So. 170, 16 Ann.Cas. 604." Faucett v. Provident Mut. Life Ins. Co. of Philadelphia, 244 Ala. 308, 13 So.2d 182 (1943).
I respectfully disagree with the judgment of the Court.
TORBERT, C. J., and BLOODWORTH, J., concur.

On Rehearing
APPLICATION FOR REHEARING OVERRULED.
FAULKNER and JONES, JJ., concur.
BEATTY, J., extends special concurrence, with whom MADDOX, SHORES and EMBRY, JJ., join.
BLOODWORTH, J., dissents on rehearing, with whom TORBERT, C. J., and ALMON, J., join.
BEATTY, Justice (special concurrence extended).
We now have held that reasonable commercial standards will be applied to restrictive subleasing clauses. As I view the application of this principle to those clauses, we have simply refused to interpret those terms literally, but instead we have applied a constructive condition precedent to them, that being that the lessor will not unreasonably withhold his approval. Phrasing the condition in another way, if a reasonable and prudent businessperson would not object to the sublessee, the lessor will not be allowed to arbitrarily disapprove of him unless the parties have expressly bargained to give the lessor that power without regard to commercial standards.
The judicial construction of conditions in written instruments is far from a new development in law. Indeed, Lord Mansfield's opinion in Kingston v. Preston, 2 Doug.K.B. 689 (1773) appears to be one of the first, if not the first, to apply the doctrine to contracts. The effect of the doctrine has been that courts not infrequently do not enforce the literal terms of written undertakings but, in order to avoid unjust results otherwise reached by literalism, impose constructive conditions. See Farnsworth, Disputes over Omission in Contracts, 68 Colum.L.Rev. 860 (1968).
A statement of this principle as it is applied in Alabama is found in Norwood Hospital, Inc. v. Howton, 32 Ala.App. 375, 26 So.2d 427 (1946):
This responsibility of the court (to adhere to the expressed stipulations of a written agreement) must, however, yield to a reasonable construction of all contracts in an effort to secure and safeguard the real intention of the parties in the light of their mutual understandings and the objects and rights intended to be accomplished and protected. . . .
Our Court there found analogies in the cases dealing with the satisfaction of either personal taste or mechanical fitness. Alabama cases dealing with contracts involving the latter have construed them to require a good faith satisfaction. That is, if the person to be satisfied should be satisfied, he will be deemed to be satisfied. For other applications of the principle see Electric Lighting Co. v. Elder Bros., 115 Ala. 138, 21 So. 983 (1896); Jones v. Lanier, 198 Ala. 363, 73 So. 535 (1916); Utley v. Stevens, 221 Ala. 666, 130 So. 405 (1930); Manufacturers' Finance Acceptance Corp. v. Woods, 222 Ala. 329, 132 So. 611 (1931); Shelton v. Shelton, 238 Ala. 489, 192 So. 55 (1939). In my view, this case is analogous to those cases requiring satisfaction, viz., if the lessor is to be satisfied with the proposed lessee, the condition is fulfilled when he should have been satisfied, based upon reasonable commercial standards.
The members of the American Law Institute support this view. In their 1977 publication of 2 Restatement of Property 2d, Landlord and Tenant, just issued, this recommendation appears:

*1041 § 15.2(2) A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.
As my original concurrence pointed out and as the Restatement recommends, the parties remain completely free to expressly agree to the landlord's absolute right to consent to his own "satisfaction" with the proposed sublessee.
MADDOX, SHORES and EMBRY, JJ., concur.
BLOODWORTH, Justice (dissenting on rehearing).
I would grant rehearing and affirm the trial judge's grant of summary judgment. Thus, I must respectfully dissent from the majority's overruling of the application for rehearing. In my judgment, the majority opinion has the effect of rewriting tens of thousands of existing real estate leases in Alabama which were negotiated by lessors and lessees in good faith reliance on our existing law.
This Court, in City Garage Sales v. Ballenger, 214 Ala. 516, 108 So. 257, in 1926, over 50 years ago, expressly held valid a provision "that the premises should not be relet . . . without the consent of the lessor."
The minority rule (followed in only two or three states) has now been adopted by our Court. The majority rule which recognizes the provision as valid, unambiguous and enforceable, has been followed in at least seven jurisdictions, New Jersey, New York, Washington, D. C., California, Maryland, and New Hampshire.
I am disappointed that, at least, the majority did not make this new rule "prospective" in its application. It would have caused no harm and it would certainly have protected those tens of thousands of landlords, tenants and lawyers who have relied on our unbroken line of judicial precedent.
I plead, as my Brother Justice Almon did in a recent case, for judicial restraint.
TORBERT, C. J., and ALMON, J., concur.
NOTES
[1] Because the trial Court's ruling is not grounded on the specificity of pleading requirement of ARCP, 9(b), nothing in this opinion should be construed as upholding the sufficiency of the complaint in this regard; and this for the reason that it is not the function of an appellate court to make initial rulings, nor to review issues not presented.