32 So.2d 309

## SCHOCK v. HOLLEMAN.
### I Div. 544.

Court of Appeals of Alabama.
Oct. 28, 1947.

Johnston, McCall & Johnston, of Mobile, for appellant.

Graham A. Sullivan, of Mobile, for appellee.

HARWOOD, Judge.

This is an action in assumpsit originally instituted by J. E. Holleman in the Inferior Civil Court of Mobile County to recover $100 from J. A. Schock, the appellant, the claim growing out of a contract for the sale of cross-ties entered into between the parties. Judgment was rendered for the plaintiff in the Inferior Civil Court, and on appeal to the Circuit Court of Mobile a judgment in the amount of $93.63 was rendered by that court, the cause being heard in the circuit court without a jury.

The contract in this case is contained in the following letter:

"Mr. J. E. Holliman,
Atlas Finance Co.,
Mobile, Ala.
Dear Mr. Holliman:

I hereby guarantee to sell and deliver from the premises known as the Franklin Place in Prichard 750 good cross-ties per your acceptance, you to haul from the premises at .40¢ per tie. Any ties you are short we will refund you the amount of 40¢ each from the lot.

Cordially yours,
jas/s By J. A. Schock.
Payment of $200.00 hereby acknowledged.
By J. A. Schock.

(In ink the following:)
750
40

———
300.00
100.00 Previous payment

———
$200.00 Bal due paid
J. A. Schock."

Evidence introduced by the plaintiff below (appellee here) tended to show that on 5 January 1945 the appellee went with Mr. Schock to the Franklin Place where Mr. Schock showed him in a general way the cross-ties he wished to sell. A few ties had been stacked near a shack, and the rest were imbedded in two abandoned railroad spur tracks on the premises.

After entering into the contract evidenced by the above letter Mr. Holleman experienced considerable difficulty in getting any one to haul the ties. The Gulf City Transfer hauled 94 ties for him and W. N. Schaniel hauled the remaining between 16 February and 27 February, 1945, the plaintiff below testifying that he removed some 506 ties altogether.

The plaintiff below testified that shortly before the hauling was completed on 27 February he was on the Franklin Place premises, counted the depressions in the ground caused by removal of the ties, and these showed that less than 550 ties had been removed for hauling. Mr. Schaniel testified that he went onto the Franklin Place just prior to sending his truck there and that there were not over 550 ties there, good and bad.

For the defense Mr. Schock testified that when he took Mr. Holleman to the Franklin Place they walked over approximately half of the spur tracks examining the ties and that Mr. Holleman was satisfied with their condition. Afterwards he counted the number of ties and there were 1140 of them, of which he estimated that about one third were bad.

On 5 February, and again on 19 February 1945 Mr. Schock wrote appellee to the effect that ties were being stolen from the Franklin Place, and that the loss would be on him.

Appellant's counsel argues that the purchase price having been paid delivery of the ties took place when the ties were pointed out to appellee on the premises and placed at his disposal, and therefore any shortage of ties below the 750 sold must fall on the title holder, the appellee here. The factual premises of this case do not support such conclusions. The contract

provided for the sale of "750 good cross ties *per your acceptance*". (Italics ours.) The further provision "Any ties you are short we will refund you the amount of 40¢ each from the lot" can only indicate doubt on the part of the seller that 750 good ties would be found suitable for the purchaser, or acceptable to him. Acceptance by the purchaser was a condition subsequent to the completion of this contract of sale. Until met title did not pass.

■ The phrase "per your acceptance" we interpret as being analogous to and governed by the same rules as pertain to provisions in contracts where the performance is to be to the "satisfaction" of the promisee. As to such provisions, Mr. Justice Sayre, in Jones v. Lanier, 198 Ala. 363, 365, 73 So. 535, 536, laid down the following concise doctrine: "Such agreements, like all others, are enforceable according to the true intent of the parties. If a party voluntarily assumes the obligations and risks of an agreement by which he undertakes to furnish labor and material for a compensation, the payment of which is made dependent on a contingency so hazardous or doubtful as the approval or satisfaction of the other party, his legal rights are to be determined according to its provisions fairly construed, and against the consequences resulting from his bargain the law can afford him no relief. McCarren v. McNulty, 7 Gray, Mass., 139. The difficulty of such cases lies in ascertaining the real intention of the parties. Rules laid down for such cases are really rules of interpretation, and these are applied according to the situation of the parties and the purposes they may appear to have had in view when entering into the contract. This court seems to have accepted this general proposition, that to justify one party in his rejection of labor performed and material furnished by the other on the ground that they were not satisfactory, as the contract provided they should be, it must appear that the party seeking to avoid payment, according to the stipulation on his part, was in good faith dissatisfied and for some better reason than that he merely desired to avoid liability. Electric Light[ing] Co. [of Mobile] v. Elder, 115 Ala. 138, 21 So. 983; Worthington v. Gwin [119 Ala. 44, 24 So. 739, 43 L.R.A. 382], supra; Higgins Mfg. Co. v. Pearson, 146 Ala. 528, 40 So. 579. This doctrine is generally stated in substantially this form, that, to avoid liability after performance, the dissatisfaction of the party for and to whom work is done and material furnished must be genuine and caused by such defects or omissions as would cause a reasonable man to be dissatisfied. 3 Page on Contracts, § 1390. But it is commonly held that where the contract involves things intended to satisfy personal taste or feeling the party to whom they are furnished is the free and exclusive judge whether they are satisfactory; and substantially the same rule seems to be maintained in cases where machinery or special appliances have been furnished and the party to whom they are furnished, after fair test, alleges his dissatisfaction with their mechanical utility or operative fitness for the purposes intended. Electric Light [ing] Co. [of Mobile] v. Elder, supra; 3 Page on Contracts, supra; 9 Cyc. 618-620; 6 R.C.L., p. 953, § 334." See also Electric Lighting Co. of Mobile v. Elder Bros., 115 Ala. 138, 21 So. 983; Higgins Mfg. Co. v. Pearson, 146 Ala. 528, 40 So. 579.

■■ The conclusion of the trial court that judgment should be entered for the plaintiff below is amply supported by inferences to be drawn from the evidence presented that the appellee was free of capriciousness in exercising his right of acceptance of good ties, and that title passed to none of the ties other than those actually accepted by the appellee.

We do not think, as argued by appellant, that the basic rules of contract law above mentioned are affected or changed by the provisions of our Uniform Sales Act, particularly Section 24, Title 57, or in any way dictate a conclusion different from the one here reached.

Affirmed.